**Salvatore FARIELLO, Plaintiff,**

v.

**Grace CAMPBELL, in her personal capacity, Theresa Mullins, in her personal capacity, William Ekadis, in his personal capacity, David Freundlich, in his personal capacity, and an Unknown Law Clerk in the Law Department of the Family Court, State of New York, Suffolk County, in his or her personal capacity, Defendants.**

**No. CV 93–4426.**

United States District Court, E.D. New York.

Aug. 6, 1994.

Salvatore Fariello, plaintiff pro se.

G. Oliver Koppell, Atty. Gen., State of New York by Robert K. Drinan, Deputy Atty. Gen., Mineola, NY, for defendants.

**OPINION AND ORDER**

SPATT, District Judge:

As the decision by Chief Judge Jon O. Newman in *In re Martin–Trigona*, 9 F.3d 226 (2d Cir.1993), illustrates, it is the plight of the federal court at times to be repeatedly subject to the machinations of certain plaintiffs who pursue vexatious and unmeritorious litigation. This case is one such instance.

The plaintiff pro se owns a printing business, and publicly advocates the supremacy of "fathers' rights" based of his interpretation of the Old Testament. The plaintiff has, for the *fourth* time, brought before this Court a vexatious and harassing federal civil rights lawsuit regarding certain "conspiratorial" acts by the defendants, who are associated with the Family Court of Suffolk County and include a judge, a hearing examiner and a court clerk. The first two such lawsuits were respectively dismissed by the Court on November 5, 1992 and May 8, 1993. The latter decision is reported at *Fariello v. Rodriguez*, 148 F.R.D. 670 (E.D.N.Y.1993), *aff'd on opinion below*, 22 F.3d 1090 (2d Cir.1994). The third suit was voluntarily withdrawn by Fariello and closed on June 16, 1994, after this Court declined to issue a preliminary injunction prohibiting further proceedings in the Family Court against Fariello.

The defendants move pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the complaint, or in the alternative for summary judgment in their favor. For the reasons stated below, the Court grants the defendants' alternative motion for summary judgment, and dismisses the plaintiff's complaint as a matter of law.

**BACKGROUND**

The plaintiff Salvatore Fariello ("Fariello") and his ex-wife Karen Marotta ("Marotta") were married on January 1, 1971. Their son Jared was born in 1978. In 1981, Fariello and Marotta executed a separation agreement, which was not converted into a divorce judgment. Marotta subsequently commenced a divorce action in the New York State Supreme Court, Suffolk County, in 1982, and a judgment of divorce was granted on March 5, 1982. The judgment required, among other things, that Fariello pay $40 per week in child support, half directly to Marotta, and half to a trust account for Jared. The State Supreme Court did not retain jurisdiction for any modifications of the divorce judgment.

In October 1990, Marotta petitioned the Family Court of Suffolk County ("Family Court") for a modification of the divorce judgment. A hearing was held on January 20, 1991, before Hearing Examiner William Rodriguez, and in an order dated March 27, 1991, Fariello was found to have "failed to comply with the terms of the Divorce directing maintenance of bank book with deposits of $20.00 per week. Bank Book was closed 12–85. Respondent has not paid $20.00 per week directly to Petitioner since June 1990." As a result of this finding, the divorce judg-

ment and original child support order were modified, and Fariello was directed by the Hearing Examiner's order to pay $40 per week in child support directly to the Suffolk County Support Enforcement Bureau. In addition, the order fixed Fariello's trust account arrears at $6,600 and direct payment arrears at $620, for a total of $7,220 in support arrears. Credited against this total was $1,375 of payments made by Fariello. A judgment was entered in favor of Marotta for the sum of $5,854 on April 25, 1991 by Hearing Examiner Rodriguez.

Fariello filed objections to the findings and the March 27, 1991 order of Hearing Examiner Rodriguez. His objections, however, were denied by Family Court Judge W. Bromley Hall in an order entered on August 19, 1991. Judge Hall found that "[a] careful review of the record indicates that the Hearing Examiner afforded the parties a full and fair opportunity to be heard and that his decision was based on the weight of the credible evidence presented."

Subsequently, Marotta petitioned for enforcement and another modification of the child support order. Fariello cross-petitioned for a downward modification of the $40 per week child support payment. Thereafter, Marotta filed a petition alleging that Fariello was in violation of the modified child support order of March 27, 1991. A hearing was held before Hearing Examiner Rodriguez on all of these issues, at which both parties and other witnesses testified. In findings of fact dated September 24, 1991, Hearing Examiner Rodriguez found that with respect to the petitions to modify the child support payments, neither an increase nor decrease in the amount of child support was warranted. The Hearing Examiner also held that Fariello was in willful violation of the March 27, 1991 child support order, having failed to make even one support payment to the Support Enforcement Bureau. The Hearing Examiner determined that as of August 14, 1991, Fariello was in arrears to the Support Enforcement Bureau in the amount of $1,120, and directed that this amount be reduced to a money judgment for the benefit of Marotta.

In late 1991, Fariello filed objections to Hearing Examiner Rodriguez's findings of September 24, 1991, as well as to certain other orders pertaining to proceedings in which Fariello challenged Marotta for the custody of Jared. Fariello also moved to vacate the money judgments entered against him. On December 11, 1991, Family Court Judge Arthur J. Abrams denied Fariello's objections and motion. Undeterred, Fariello again filed motions in early 1992 seeking to vacate the September 24, 1991 findings of Hearing Examiner Rodriguez, and to stay all support payments pending a reconsideration of his application to suspend his child support obligation. On May 21, 1992, Judge Abrams also denied these motions.

On June 9, 1992 an "Order of Disposition (Violation of Support Order)" was issued by Hearing Examiner Rodriguez, with respect to Fariello's arrears to the Child Enforcement Bureau. Based on the arrears, the June 9, 1992 Order of Disposition granted judgment in favor of Marotta in the amount of $1,120. Fariello filed objections to the June 9, 1992 judgment. In an order responding to those objections dated August 13, 1992 and corrected on August 18, 1992, Family Court Judge Marion T. McNulty denied Fariello's objections. According to Judge McNulty, Fariello contended that the June 9th Order was defective, because (1) it mistakenly listed the underlying hearing concerning his violation of the original support order, which was held on January 20, 1991, to have been held on September 27, 1991, and (2) it listed an incorrect date for the underlying order of child support. Judge McNulty ruled these mistakes were harmless clerical errors, and held that the Hearing Examiner's findings and conclusions of September 24, 1991 were supported by the record.

On September 8, 1992, Fariello filed a notice of appeal to the Appellate Division, Second Department. In the notice, he stated that he was appealing Judge McNulty's corrected order of August 18, 1992, Hearing Examiner Rodriguez's order and judgment of June 9, 1992, and the order and judgment of April 25, 1991 wherein a judgment of $5,854 was entered in favor of Marotta. In a second notice of appeal to the Appellate Divi-

sion, Second Department dated October 14, 1992, Fariello appealed Judge Abrams' order of May 21, 1992.

In addition to these appeals, Fariello had also commenced an Article 78 proceeding in the New York State Supreme Court, Suffolk County, naming as respondents Marotta, Judge Abrams, Hearing Examiner Rodriguez, and others who were participants in the Family Court litigation. In his petition, Fariello sought review and reversal of virtually all the orders and judgments entered against him by the Family Court. Among other things, Fariello petitioned for (i) an order directing the Family Court to restore Fariello's visitation rights under the divorce judgment; (ii) an order directing the Family Court to conduct a hearing outside of Suffolk County, on the issue of the suspension of his child support payments, (iii) an order compelling the Family Court to vacate the money judgments and orders entered against Fariello regarding his child support payments and arrears, and prohibiting the Family Court from conducting any enforcement proceedings against Fariello with respect to these payments and arrears; (iv) an order prohibiting the Child Enforcement Bureau from enforcing the orders of the Family Court regarding his child support payments; and (v) vacating the determination of Hearing Examiner Rodriguez regarding child support payments and arrears. On February 3, 1993, Justice Paul Baisley dismissed the petition as a matter of law, because the relief requested was precluded by New York CPLR § 7801(2).

Dissatisfied with the unfavorable rulings in the state court, Fariello turned his efforts toward the federal court. Fariello drafted and filed a closely-spaced forty page civil rights complaint under 42 U.S.C. § 1983 against all of the parties in the Family Court proceedings, including the Family Court judges, the Hearing Examiners, Marotta and her new husband. The complaint alleged a conspiracy by the state courts to deny divorced fathers in general, and Fariello in particular, equal protection under the United States Constitution. By bringing the action, Fariello in effect sought another route by which to review and reverse the rulings

against him in the state court. As mentioned above, the Court dismissed this case pursuant to Fed.R.Civ.P. 12(b)(6), because the Court lacked the subject matter jurisdiction to hear domestic relations disputes, and "as a matter of law, the facts set forth in the complaint do not support a claim legally entitled to constitutional protection." *Fariello v. Rodriguez*, 148 F.R.D. at 689.

Meanwhile, on April 15, 1993, a contempt hearing commenced before Hearing Examiner William Ekadis of the Family Court with respect to the issue of whether Fariello's violation of the March 27, 1991 child support order, as determined by Hearing Examiner Rodriguez in his June 9, 1992 Violation of Support Order and affirmed by Judge McNulty on August 18, 1992, was "willful." Erroneously, the violation petition charged that Fariello was in willful violation of the support order dated September 27, 1991. As explained above, the actual date of the support order is March 27, 1991 and Family Court Judge McNulty found that this mistake in dating was the result of a clerical error by the Family Court. Although Fariello knew about the mistaken date, he seized upon the error and argued before the Hearing Examiner for proof of an order of support dated September 27, 1991, claiming there was no such order.

The April 15, 1993 contempt hearing was continued until August 18, 1993, in order to allow Fariello to subpoena witnesses on his behalf. On July 8, 1993, Fariello sent a letter to Hearing Examiner Ekadis, requesting that four subpoenas be "so ordered." The subpoenas were for the appearance and testimony of Mr. Fariello's son Jared, Hearing Examiner Rodriguez, Family Court Judge Abrams, and Family Court clerk Edward Heepe. According to Fariello, "[e]ach of them had specific knowledge of circumstances that would absolutely exonerate Fariello of the charge of willful violation of a child support order and the charge of quasi-criminal contempt of court." Complaint, ¶ 12.

On July 12, 1993, the Chief Clerk of the Family Court, Grace Campbell, so ordered the subpoena for the appearance of Jared. She did not, however, so order the other

three subpoenas. According to Fariello, Campbell wrote a memo stating the other three subpoenas should be presented to Hearing Examiner Ekadis for his consideration. The three unsigned subpoenas were returned to Fariello on August 13, 1993. Fariello alleges that accompanying the subpoenas were two hand-written memoranda, one from an Unknown law clerk addressed to Mr. Ekadis which stated:

This is the 2nd time these have circulated. Mr. Fariello was advised to proceed via motion as to the probable testimony and its relevancy as to Mr. Heepe, HE Rodriguez & Hon. AJA. There was no way for the Law Dept. to know if Mr. Fariello received the recommendation. Notwithstanding that, it is recommended that you decline to sign these subpoenas for the same reasons.

Complaint, ¶ 16.

The contempt hearing resumed on August 18, 1993. According to the Family Court docket sheet, Hearing Examiner Ekadis declined to so order the subpoenas requesting the testimony of Mr. Heepe, Hearing Examiner Rodriguez and Judge Abrams, because there was no offer of proof. Fariello refused to be put under oath during the hearing, and instead requested to see a judge with respect to the subpoenas. Marotta testified at the contempt hearing. The Hearing Examiner found her testimony regarding Fariello's willful failure to pay the support to be clear and convincing, and recommended that a judge proceed with the contempt hearing and confirm Marotta's testimony pursuant to New York Family Court Act section 454(3)(a). The matter was immediately sent to Family Court Judge David Freundlich.

Before Judge Freundlich, Fariello attempted to raise the issue of the Hearing Examiner's declination to so order the three subpoenas, as well the issues of modifying the child support, custody and visitation segments of his divorce judgment. Judge Freundlich refused to hear Fariello on these issues, stating that the only issue before him was the contempt proceeding. *See* Transcript of Proceedings before Judge Freundlich, August 18, 1993, at pp. 22 and 24. Judge Fruendlich reviewed a tape of the

Hearing Examiner's contempt hearing and confirmed the findings, holding Fariello in willful contempt of the March 27, 1991 order of support. At that time Fariello reiterated that, although he could make the arrears and support payments, he would not obey the support order for religious reasons, and sought to link any payment by him to a modification of the support order, as well as the terms governing Jared's custody. Judge Freundlich then sentenced Fariello to eleven days in the Suffolk County Jail, pursuant to Family Law section 454(3)(a).

*The Present Action.*

Based on the circumstances surrounding the April 15, 1993 and August 18, 1993 contempt hearings and his sentencing, Fariello commenced a second federal action by filing the complaint in the present case pursuant to 42 U.S.C. § 1983 against Grace Campbell, Theresa Mullins, William Ekadis, David Freundlich and an Unknown Law Clerk in the Family Court, in their personal capacities. The complaint alleges that the defendants violated Fariello's First Amendment, Fourth Amendment, Sixth Amendment, Equal Protection and Due Process rights under the United States Constitution. In addition to the various causes of action under section 1983, the complaint also pleads causes of action for conspiracy to violate Fariello's civil rights under 42 U.S.C. §§ 1985(2) and (3), and neglect to prevent wrongs committed against Fariello pursuant to 42 U.S.C. § 1986. In all, the complaint alleges eight federal causes of action against each defendant. Fariello has also added state law claims against all of the defendants for intentional infliction of emotional distress, false arrest and false imprisonment. Moreover, as against the defendants Campbell, Ekadis and Freundlich, Fariello alleges a cause of action for neglect and willful failure to exercise ministerial duties.

The following allegations concerning the defendants' actions form the essential basis of Fariello's complaint:

1. Hearing Examiner Ekadis' declining to so order the three subpoenas on the recommendation of a law clerk constitutes a failure to perform a ministerial duty that is imposed upon the Hearing Examiner by

law. According to Fariello, signing a so ordered subpoena for a pro-se litigant is a ministerial act under New York law. Complaint, ¶¶ 3A, 9, 23, 24.

2. Similarly, Judge Freundlich's declining to so order the three subpoenas constitutes a failure to perform a ministerial act. Complaint, ¶¶ 33.

3. The contempt proceeding was held without allowing Fariello an opportunity to produce witnesses on his behalf. Complaint, ¶ 21.

4. By bringing him before Judge Freundlich on August 18, 1993, Fariello was denied his right to an appeal of Hearing Examiner Ekadis' recommendation to the Family Court judge, concerning the finding that Fariello was in willful contempt of the support order of March 27, 1991. Complaint, ¶ 38.

5. There is no order of September 27, 1991, and therefore Fariello could not have been held in contempt of violating any such order. Complaint, ¶ 40.

6. The Family Court of the State of New York, County of Suffolk, "harbors a gender-based discriminatory animus against divorced fathers as a class," and "has a discriminatory animus against Christians as a class who believe and express the belief that the laws of God as stated in the Bible transcend the authority of the secular courts." Complaint, ¶¶ 45–47.

7. There is a class-based discriminatory animus against non-attorney, pro se litigants as a class in New York courts. Complaint, ¶ 48.

As a result of these allegations, Fariello demands $5 million in damages from every defendant, on each of the eleven causes of action alleged in the complaint, for a total demand of $275 million.

*The Present Motions.*

The defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative to grant summary judgment in their favor pursuant to Fed.R.Civ.P. 56(b), on the grounds that: (1) the Court lacks the subject matter jurisdiction to hear this case, because the plaintiff is in effect appealing the ruling of the state court and federal courts lack the statutory authority to hear appeals from decisions of the state court; (2) all of the defendants are subject to absolute judicial immunity from suit; and (3) the plaintiff has not stated any federal claims upon which relief can be granted.

The plaintiff opposes the motion, and contends that the Court has subject matter jurisdiction to hear this case on the basis of the section 1983 claims. According to Fariello, the complaint has sufficiently alleged facts to support his causes of action alleging multiple violation of his constitutional rights. Moreover, Fariello contends that the defendants are not immune from liability under section 1983, because the duties they allegedly transgressed—basically, not signing the subpoenas and proceeding with the contempt hearing without allowing him an opportunity to present his defenses or respond to the Examiner's findings—were ministerial in nature.

While the defendants' motion to dismiss was pending, the plaintiff filed three additional motions to amend the complaint.

In the first motion to amend the complaint, Fariello moves to add a clerk of the Family Court, Gail Kohn, as a defendant. According to Fariello, Gail Kohn refused to release a copy of the order of commitment to Fariello's present wife on August 19, 1994. As a consequence of this alleged refusal, Fariello contends that he was denied relief by the Appellate Division of the New York State Supreme Court, and remained incarcerated for ten days. As with all the other defendants, Fariello claims that Kohn had a ministerial duty to release the order of commitment to Fariello's wife, and participated in the purported conspiracy along with the other defendants to deprive him of his constitutional rights.

In the same motion, Fariello also moves to add the allegation that the defendants acted with personal malice towards him, and that his damages include mental anguish, suffering, shame and humiliation, ridicule and scorn, mental degradation, indignity and disgrace, damage to reputation, interruption and loss of business, loss of earnings and loss of marital consortium.

In the second motion to amend the complaint, Fariello moves to elucidate the allegations against Hearing Examiner Ekadis and Judge Freundlich. With respect to Hearing Examiner Ekadis, Fariello seeks permission to include the allegation that Ekadis acted in a willful, wanton, reckless and grossly negligent manner by refusing to perform two alleged ministerial duties with the intent to deprive Fariello of his civil rights. According to Fariello, the two alleged duties that Ekadis' refused to perform are (1) his duty to refer to a judge the issue of Fariello's "visitation defense," pursuant to Family Court Act § 439(c) and Domestic Relations Law § 241, and (2) his duty to provide Fariello with a written determination and finding of facts as required by Family Court Act § 439(e).

With respect to Judge Freundlich, Fariello seeks permission to include the allegation that Freundlich acted in a willful, wanton, reckless and grossly negligent manner by (1) refusing to afford Fariello the proper appellate process for contesting the Hearing Examiner's findings on contempt, as allegedly provided by Family Court Act § 439(e), and (2) refusing to permit Fariello to raise his "visitation defense." Fariello contends that Judge Freundlich had a ministerial duty to provide Fariello an opportunity to object to the Hearing Examiner's findings, as well as to raise defenses to the contempt findings, and that Judge Freundlich refused to do so in order to deprive Fariello of his civil rights.

Fariello's third motion to amend the complaint is entitled a "Motion to Supplement Pleadings Based on New Evidence." In this motion, Fariello moves to include the allegation that Judge Freundlich "acted in clear absence of all jurisdiction over the subject matter when he caused plaintiff to be incarcerated." The new evidence that Fariello apparently relies on consists of (i) an "Order of Disposition (Violation of Support Order)" issued by a Hearing Examiner at the Family Court, Suffolk County in another, unrelated case, (ii) a memorandum sent out by the Family Court explaining how to file objections to the findings of a hearing examiner, and (iii) the order issued by Family Court Judge Abrams on December 11, 1991 denying Fariello's objections to Hearing Examin-

er Rodriguez's findings of September 24, 1991 on the grounds that Hearing Examiner Rodriguez had not yet entered a final order in the matter. According to Fariello, these three documents are proof that a hearing examiner's findings of violation of a support order require the matter to be referred to a judge in order to hear objections and any evidence in opposition to the finding.

## DISCUSSION

Rule 12(b) of the Federal Rules of Civil Procedure states in relevant part that a motion to dismiss made pursuant to Rule 12(b)(6) shall be converted to one for summary judgment and disposed of pursuant to Rule 56, if matters outside the pleadings are presented to and not excluded by the court, and the parties have a reasonable opportunity to present all the material made pertinent to such a motion.

Here, the defendants' alternative relief is for summary judgment dismissing the complaint. Both sides have presented material outside the pleadings addressing this relief, and the Court has not excluded it in considering the merits of the motions before it. The parties have also had a reasonable opportunity to present all the material relevant to the motions. Accordingly, the defendants' motion to dismiss shall be treated as one for summary judgment under Rule 56.

### Summary Judgment Standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World*, 922 F.2d at 121. Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.R.Civ.P. 56(c) and (e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 (2d Cir.1990).

1. *The Court's Subject Matter Jurisdiction.*

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the United States Supreme Court held that federal district courts do not have jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings *even if those challenges allege that the state court's action was unconstitutional."* *Id.*, at

486–87, 103 S.Ct. at 1317 (emphasis supplied). Rather, pursuant to 28 U.S.C. § 1257(a), federal appellate review of state court judicial decisions may only be had in the Supreme Court. *Feldman*, at 486–87, 103 S.Ct. at 1317. *See also Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 284–88, 90 S.Ct. 1739, 1742–43, 26 L.Ed.2d 234 (1970) (lower federal courts do not have the power to directly review cases from state courts); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–17, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923) (the district court does not possess appellate jurisdiction over decisions of the state courts); *Texaco, Inc. v. Pennzoil*, 784 F.2d 1133, 1141–42 (2d Cir.1986), *rev'd on other grounds*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

In *Feldman*, the respondents sought admission to the District of Columbia Bar, and petitioned the District of Columbia Court of Appeals—the functional equivalent of a state's highest court in that jurisdiction—for the waiver of a bar admission rule which required applicants to have graduated from an accredited law school. The District of Columbia Court of Appeals denied the petition. The respondents filed suit in the federal district court, alleging that by not waiving the bar admission requirement, the District of Columbia Court of Appeals violated their Fifth Amendment due process rights. They also attacked the bar rule as facially unconstitutional. The district court dismissed the complaint for lack of subject matter jurisdiction, on the ground that to do otherwise would place it in the position of reviewing an order of the District of Columbia's highest court. *See* 460 U.S. at 469–70, 103 S.Ct. at 1308. The United States Court of Appeals for the District of Columbia Circuit reversed, holding there was jurisdiction.

The Supreme Court vacated the Circuit Court's decision and remanded the case to the district court. In the course of its decision, the Supreme Court distinguished between constitutional challenges to the judicial proceedings of the D.C. Court of Appeals, which the district court did not have subject matter jurisdiction to adjudicate, and constitutional challenges to a bar application rule

made by the D.C. Court of Appeals in its legislative capacity of overseeing the entry of attorneys to the local bar, which the district court did have subject matter jurisdiction to adjudicate. The Supreme Court held:

> [A] United States district court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may only be had in this Court. . . . To the extent that [the respondents] mounted a general challenge to the constitutionality of [the bar application rule], however, the District Court did have subject-matter jurisdiction over their complaints.

*Feldman,* at 482, 103 S.Ct. at 1315–1316.

■ The only exception to what has become known as the *Rooker–Feldman* doctrine, is where a federal statute authorizes federal appellate review of final state court decisions. One such statute is the habeas corpus statute governing challenges to state sentences, 28 U.S.C. § 2254. *See Pennzoil,* 784 F.2d at 1142, n. 6; *Ritter v. Ross,* 992 F.2d 750, 753 (7th Cir.1993) (*Rooker–Feldman* forbids federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes review), *reh'g en banc denied,* (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

■ Furthermore, a plaintiff may not seek a reversal of a state court judgment simply by recasting his complaint in the form of a civil rights action pursuant to 42 U.S.C. § 1983. *Ritter,* 992 F.2d at 754 (citing cases); *Tang v. Appellate Division of New York Supreme Court, First Department,* 487 F.2d 138, 142 (2d Cir.1973), *cert. denied,* 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). In discussing whether constitutional claims raised in a section 1983 action that collaterally attacks a state court judgment, but where the constitutional claims were not raised in the state court proceedings, would confer federal subject matter jurisdiction, the Supreme Court in *Feldman* held that there was no such jurisdiction if the section 1983 claims were "inextricably intertwined" with the state court judgment:

> If the constitutional claims presented to a United States district court are inextrica-

bly intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state-court decision. This the district court may not do.

*Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 .n. 16. *See also Pennzoil,* 481 U.S. at 24–25, 107 S.Ct. at 1533 (Marshall, J., concurring); *Ritter,* 992 F.2d at 753–54.

■ Whether a federal claim is "inextricably intertwined" with a state court judgment varies with the circumstances of a particular case. The crucial point, however, is whether "the district court is in essence being called upon to review the state-court decision." *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1316 n. 16; *Ritter,* 992 F.2d at 754. Two standards are applied by courts to determine how "inextricably intertwined" the federal claim is to a state court judgment.

The first standard looks to see whether the constitutional claims are "separable from and collateral to" the merits of the state court judgment, in the same way an order is separable and collateral from the merits of a case for the purpose of allowing an interlocutory appeal before the merits of the case are finally adjudged. *See Pennzoil,* 481 U.S. at 21, 107 S.Ct. at 1531 (Brennan, J., concurring) (citing *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)); *Ritter,* 992 F.2d at 754. The second standard looks to see how dependent the merits of the federal claim are on the state court decision. Under this standard,

> a federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment.

*Pennzoil,* 481 U.S. at 25, 107 S.Ct. at 1533 (Marshall, J., concurring); *see also Marks v. Stinson,* 19 F.3d 873, 886 n. 11 (3rd Cir.

1994); *Wijas v. Nelson,* 1994 WL 117988, 1994 U.S.App. LEXIS 6890 at *5 (7th Cir. March 29, 1994).

■ Pursuant to the foregoing principles and in the context of a federal section 1983 suit collaterally attacking a state court judgment, the *Rooker–Feldman* doctrine has come to mean that, if the section 1983 suit challenges a rule or statute relied upon by the state court on the grounds that the rule or statute is itself unconstitutional, then the federal court has the subject matter jurisdiction to hear the case. *See e.g. Feldman,* at 486–88, 103 S.Ct. at 1317 (remanding to district court that portion of the case challenging the bar application rule as unconstitutional); *Pennzoil,* 784 F.2d at 1144 (jurisdiction exists to challenge Texas post-judgment lien and supersedeas bond statute on grounds that they are unconstitutional as applied).

If, however, the section 1983 suit challenges the decision of the state court on the grounds that the state court's interpretation of a statute was unconstitutional, or that the state court committed a constitutional error in arriving at its decision, then the federal court does not have subject matter jurisdiction to hear the case. *See e.g., Rooker,* 263 U.S. at 414–15, 44 S.Ct. at 150 (challenge to a state court's judgment on the grounds that the state court's interpretation of a statute was unconstitutional does not confer federal subject matter jurisdiction); *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir.1994) (where state court proceeding to disbar attorney entailed multiple violations of due process, such as proceeding before the wrong judge, federal court did not have subject-matter jurisdiction to hear section 1983 case attacking constitutionality of disbarment proceeding), *reh'g denied* (May 3, 1994); *Ritter,* 992 F.2d at 752 (where a county obtained a tax lien foreclosure judgment in the state court against plaintiff, challenge by plaintiff in federal court on constitutional grounds on the grounds of lack of notice and an opportunity to object to foreclosure proceedings did not confer subject matter jurisdiction, because constitutional claim is inextricably intertwined with state court judgment); *Wijas,* 1994 WL 117988, 1994 U.S.App. LEXIS 6890 (where the state court ordered sale of plaintiff's home in divorce proceeding, the federal court does not have subject matter jurisdiction to hear section 1983 suit against state court personnel alleging conspiracy to violate constitutional rights, because the thrust of the civil rights suit is against the merits of the divorce proceedings).

In the present case, Fariello alleges that his constitutional rights were essentially violated because: (1) Examiner Ekadis and Judge Freundlich did not sign the three subpoenas requesting the testimony of Judge Abrams, Examiner Rodriguez and clerk Heepe, (2) Fariello was not allowed to present his "visitation" defense at the contempt hearing, either before the Examiner Ekadis or Judge Freundlich, (3) by being immediately brought before Judge Freundlich, Fariello was denied an appeals process because he was not provided with written findings of fact or an adequate opportunity to contest Examiner Ekadis' finding of contempt, (4) there was no underlying violation of the support order dated September 27, 1991, and (5) the Family Court discriminated against Fariello in the contempt proceeding because he was a pro-se litigant, a Christian, and a father who advocates "father's rights."

Even assuming that all of these allegations are true, it is this Court's view that in the present civil rights suit the Court is "in essence being called upon to review the state court decision." *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. at 1315 n. 16. In some instances, Fariello challenges the Family Court's interpretation of certain statutes as unconstitutional. In other instances, the constitutional claims by Fariello are "inextricably intertwined" to the state court judgment and proceedings, in that they "can succeed only to the extent that the state court wrongly decided the issues before it," and "are predicated upon a conviction that the state court was wrong." *Pennzoil,* 481 U.S. at 25, 107 S.Ct. at 1533.

■ For example, Fariello's contends that the Clerk of the Court, Hearing Examiner and Judge committed constitutional error by interpreting New York CPLR § 2302 as allowing discretion on the part of the Family Court in deciding whether or not sign the three subpoenas. According to Fariello,

the duty to sign the subpoenas under the statute is ministerial. The Clerk, Examiner and Judge disagreed. Under *Rooker*, 263 U.S. at 414–15, 44 S.Ct. at 150, this court does not have subject matter jurisdiction to hear a challenge to a state court's decision on the grounds that the state court's interpretation of a statute was unconstitutional. Whether the statute confers a ministerial or discretionary duty on the Family Court is a matter to be raised on appeal by Fariello to the Appellate Division.

It is also apparent that Fariello's constitutional claims regarding the contempt proceeding itself—namely that Fariello was denied an appeal, and that the Examiner and Judge were under a ministerial duty to allow Fariello to present a "visitation" defense and to provide a written determination and findings of contempt under Family Court Act § 439(e)—are "inextricably intertwined" with the Family Court judgment. Fariello's constitutional claims with respect to the contempt proceeding can only succeed if it was, in fact, wrong for the Examiner and Judge not to allow the visitation defense or not present Fariello with a written determination and finding of contempt. The Examiner and Judge held that the visitation defense was not properly before them, that there was a finding of contempt, and that Fariello had the means to pay the support arrears, but would not do so. On these bases, Judge Freundlich sentenced Fariello to eleven days in jail. Fariello disagrees with the decision, and charges a constitutional violation. The issues he raises, however, concern the Family Court's interpretation of what matters can be properly considered at a contempt hearing regarding a willful violation of a support order. Such issues are not for this Court to review, but are to be raised in an appeal in the state court.

Moreover, the fact that Fariello alleges he was denied an appeal by being immediately brought before Judge Freundlich without an opportunity to review and respond to Examiner Ekadis' findings does not save his section 1983 action. *See Liedtke*, 18 F.3d at 317 (dismissing section 1983 action that attacked constitutionality of disbarment proceeding, despite the disbar-ment proceeding entailing multiple violations of due process). No statute authorizes this Court to collaterally review the Family Court judgment based on constitutional error in this case. Any constitutional error committed by the Family Court in Fariello's contempt proceeding, whether in the interpretation of statutes or procedurally, is a matter for the state appellate courts to review, or the United States Supreme Court if it grants certiorari.

It cannot be clearer to this Court that Fariello's section 1983 action is based on nothing more than his conviction that the state court erred, and the Family Court judgment should be reviewed by the federal court. The federal court, however, does not have the subject matter jurisdiction to conduct such a review. Accordingly, the complaint in this case must be dismissed pursuant to Rule 12(b)(1) as a matter of law.

### 2. *The Defendants Have Absolute Immunity from Suit.*

Further, the complaint in this case must be dismissed as a matter of law, because all of the defendants are protected from Fariello's section 1983 damages suit by judicial immunity.

American jurisprudence has adopted the common law rule that judges are absolutely immune from civil damage suits relating to the exercise of their judicial functions. *Burns v. Reed*, 500 U.S. 478, 498–500, 111 S.Ct. 1934, 1946, 114 L.Ed.2d 547 (1991) (Scalia, J., concurring and setting forth the common law categories of immunity); *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871). The rule of absolute judicial immunity applies to damage actions brought under 42 U.S.C. § 1983. *Pierson*, 386 U.S. at 554–55, 87 S.Ct. at 1218. The rule does not, however, apply to actions for prospective injunctive relief brought under section 1983. *Pulliam*, 466 U.S. at 540, 104 S.Ct. at 1980.

Absolute judicial immunity means that judges and other persons engaged in a judicial function, *i.e.*, "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," *Reed*, 500 U.S. at 498–02, 111 S.Ct. at 1946–47, are absolutely immune from damage suits for their judicial acts, unless such acts are done in the clear absence of all jurisdiction. In explaining the applicable standard, the Supreme Court has underscored that jurisdiction over the subject matter is the key element conferring immunity in a particular circumstance:

> the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him. Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to jurisdiction," the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."*

*Sparkman*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05 (emphasis supplied, quoting *Bradley*, 80 U.S. (13 Wall.) at 351–52).

The purpose of the rule of absolute judicial immunity is to protect the integrity of the judicial process, by allowing judges to "be at liberty to exercise their functions with independence and without fear of consequences." *Pierson*, 386 U.S. at 554, 87 S.Ct. at 1218. Thus, the rule applies even where the judge is accused of acting maliciously or corruptly, *id.*, however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff, and "despite any 'informality with which [the judge] proceeded,' and . . . any *ex parte* feature of the proceeding." *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985) (quoting *Sparkman*, 435 U.S. at 363 and n. 12, 98 S.Ct. at 1108 and n. 12).

In deciding whether an act is judicial for purposes of immunity, the court is guided by a "functional" approach to immunity law. *Cleavinger*, 474 U.S. at 201–02, 106 S.Ct. at 501. That is, "immunity rests on functional categories, not on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from *the nature of the responsibilities* of the individual official." *Id.* Factors a court should consider in determining judicial immunity include the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Sparkman*, 435 U.S. at 362, 98 S.Ct. at 1107. Other factors include (i) the adversary nature of the process, (ii) the correctability of error on appeal, (iii) the importance of precedent, and (iv) the presence of safeguards that reduce the need for private damage actions as a means of controlling unconstitutional conduct. *Cleavinger*, 474 U.S. at 202, 106 S.Ct. at 501.

The Court notes that hearing examiners are held to be the functional equivalent of judges for purposes of absolute immunity. *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987). Moreover, "courts have granted absolute immunity to court clerks where they were performing discretionary acts of a judicial nature." *Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir.1988) (citing cases).

It is beyond doubt that according to the above recitation of the law, each of the defendants, Family Court Judge Freundlich, Hearing Examiner Ekadis, Chief Court Clerk Grace Campbell, law clerk Theresa Mullins, and the Unknown law clerk are absolutely immune from suit in this case. Each of these persons was performing a judicial function with respect to the acts alleged in the complaint to constitute a "ministerial" duty, and which allegedly deprived Fariello of his constitutional rights. Moreover, none of the defendants acted in the clear absence of all jurisdiction.

■ Concerning the allegations of the defendants' refusal to sign the three subpoenas requesting the testimony of Family Court Judge Abrams, Hearing Examiner Rodriguez, and clerk Heepe, the Family Court has jurisdiction to issue the subpoenas in question. *See* Family Court Act §§ 153 and 439(c). Under the Act and pursuant to New York CPLR § 2302, Judge Freundlich, Hearing Examiner Ekadis and Clerk Campbell had the discretionary authority to sign the subpoenas. Moreover, the so ordering of the subpoenas is a judicial act: it is an act normally done by a judge; Fariello expected Hearing Examiner Ekadis and Judge Freundlich to so order the subpoenas; the refusal of the defendants to sign the three subpoenas arose in an adversarial proceeding, namely a contempt hearing for a violation of support order; and any error in the defendants' refusal to sign the subpoenas can be corrected on appeal.

■ The allegations against the two law clerks, Theresa Mullins and the Unknown law clerk, with respect to the subpoenas concerns the memorandum from the Unknown law clerk to Examiner Ekadis, recommending that Ekadis not so order the three subpoenas. Fariello claims the Unknown law clerk had no authority to "instruct" Examiner Ekadis not to sign the subpoenas, and that law clerk Mullins should have taken action to see to it that the subpoenas were issued. These two law clerks, however, also have absolute immunity from suit, as they were performing their judicial functions of assisting the judges and hearing examiners in the Family Court. "For purposes of absolute judicial immunity, judges and their law clerks are one." *Oliva*, 839 F.2d at 40 ("[A] law clerk is probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function."), *aff'g* 670 F.Supp. 523, 526 (S.D.N.Y. 1987).

Accordingly, to the extent that the defendants allegedly committed an actionable constitutional offense by not signing the three subpoenas, they have absolute judicial immunity from a civil damages suit arising out of their actions.

■ The remainder of Fariello's allegations concern the proceedings at the contempt hearing, and involve the alleged unconstitutional actions taken by Examiner Ekadis and Judge Freundlich during the proceedings. Fariello's complaint fails here as well. Even if all of Fariello's allegations are taken as true, Examiner Ekadis and Judge Freundlich are immune from any civil damages action arising out of the contempt hearing, because they (1) were performing judicial functions, and (2) clearly had jurisdiction over the contempt proceeding pursuant to Family Court Act §§ 439 and 454. That the proceeding may have allegedly been conducted in an *ex parte,* informal, irregular, malicious or erroneous manner does not abrogate the immunity. *Sparkman,* 435 U.S. at 363 n. 12; 98 S.Ct. at 1108 n. 12.

Indeed, the very case Fariello relies on to support his contention that the defendants are not immune from suit, *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), undermines his case and supports the defendants' immunity. In *Forrester,* an Illinois state court judge was accused in a section 1983 damages suit of sex discrimination in the demotion and firing of a court probation officer. The Supreme Court held that the judge was not immune from suit in that case, because administrative decisions involving the supervision of court employees are non-judicial functions. *Id.,* 484 U.S. at 229, 108 S.Ct. at 545. In the course of explaining the scope of judicial immunity, the Supreme Court explained that absolute immunity applied to the exercise of a judge's judicial functions, despite the "informal and *ex parte* nature of the proceeding," and any "allegation of malice or corruption of motive." *Id.,* 484 U.S. at 227, 108 S.Ct. at 544.

In the present case, the defendants were not acting in any administrative, legislative or executive function, as was the state court judge in *Forrester.* Rather, in holding the contempt hearing under section 454, Hearing Examiner Ekadis and Judge Freundlich were acting in a judicial function, within the scope of their jurisdictional competence. Contrary to Fariello's contentions, *Forrester* supports the conclusion that the defendants are entitled to absolute judicial immunity.

Accordingly, the complaint in this case must be dismissed as a matter of law, because each of the defendants is entitled to absolute judicial immunity from the section 1983 civil suit filed by Fariello.

### 3. *The Plaintiff's alleged Constitutional Violations.*

Having decided that the Court does not have subject matter jurisdiction to adjudicate this case, and that the defendants are entitled to absolute judicial immunity from suit, it is not necessary for the Court to consider the merits of the alleged constitutional violations underlying Fariello's federal causes of action.

However, let it be stated for the record that this Court has serious reservations that any such violations exist, because: (1) Fariello knew that the support order he was found to have violated is dated March 27, 1991, and that the Family Court erred in dating it September 27, 1991; (2) a Violation of Support Order and findings of fact were issued by Hearing Examiner Rodriguez on September 27, 1991 with respect to the charges necessitating the subsequent contempt hearing for willful violation of the support order; (3) Fariello had the opportunity to contest and did respond to the Violation of Support Order and findings before Family Court Judge McNulty, who found that the record supported Hearing Examiner Rodriguez's findings and order; (4) Fariello challenged the aforementioned rulings in an appeal to the Appellate Division, as well as by an Article 78 proceeding in the New York State Supreme Court; (5) the proceeding before Hearing Examiner Ekadis and Judge Freundlich was one pursuant to Family Court Act § 454(3) to punish Fariello for willful violation of the support order, and was limited to the sole issue of determining whether there was clear and convincing evidence that Fariello had the means, but failed to pay the support payments, *see e.g., Van Demark v. Van Demark,* 144 A.D.2d 862, 534 N.Y.S.2d 587 (3d Dept.1988); *Schmerer v. McElroy,* 105 A.D.2d 840, 482 N.Y.S.2d 35 (2d Dept.1984); and (6) the transcript of the proceedings before Judge Freundlich indi-

cate that Fariello addressed the issue of his ability to make the support payments.

Indeed, in this Court's view there is absolutely no evidence that a conspiracy exists in the Family Court to violate the rights of pro se fathers, and Fariello's complaint warrants dismissal because it is another disguised attempt to have this federal Court review the Family Court proceedings by way of a highly questionable civil rights complaint. *See Fariello v. Rodriguez,* 148 F.R.D. at 675–76 (frivolous civil rights action arising out of domestic relations dispute should be dismissed), citing *Hernstadt v. Hernstadt,* 373 F.2d 316 (2d Cir.1967). However, because the Court does not reach the issue of the alleged constitutional violations, to the extent that such violations may have occurred as a result of the defendants' conduct, the matter is for the state appellate courts to review in the first instance, and the United States Supreme Court if it grants certiorari.

### 4. *The Plaintiff's Motions to Amend the Pleadings.*

Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 287 (2d Cir.1974). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.,* 657 F.Supp. 136, 141 (E.D.N.Y. 1987); *Health–Chem Corp. v. Baker,* 915 F.2d 805 (2d Cir.1990).

The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial, *Panzella v. Skou,* 471 F.Supp. 303, 305 (S.D.N.Y.1979), and "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." *Lerman v. Chuckleberry Pub., Inc.,* 544 F.Supp. 966, 968

(S.D.N.Y.1982), *rev'd on other grounds sub nom., Lerman v. Flynt Distributing Co.*, 745 F.2d 123 (2d Cir.1984).

In light of the Court's rulings that it does not have subject matter jurisdiction over this case, and that the defendants are protected from a civil damages suit by absolute judicial immunity, each of the motions by Fariello to amend the pleadings is futile, and therefore must be denied.

The allegations in Fariello's motions that seek to add charges of personal malice towards Fariello, mental anguish, an elaboration of the "ministerial duties" that Examiner Ekadis and Judge Freundlich are alleged to have failed to perform, and new evidence concerning the Family Court's procedures with respect to contempt hearings on violation of support orders, have essentially already been considered by the Court in arriving at its decision to dismiss the complaint. These additional allegations do not add anything to the relevant analyses that would alter the Court's rulings with respect to the *Rooker–Feldman* doctrine or absolute judicial immunity. For the same reasons, adding Family Court clerk Gail Kohn as a defendant would also be futile.

Accordingly, the motions by Fariello to amend the Complaint in order to (1) add Gail Kohn as a defendant, (2) elucidate the allegations against Examiner Ekadis and Judge Freundlich, and (3) supplement the pleadings based on new evidence, are denied.

## SANCTIONS AND CONCLUSION

As stated at the beginning of this decision, this is the fourth action brought by Fariello before this Court to review a state court decision in the guise of alleging a conspiracy to violate his constitutional rights. In this Court's view, these actions have been groundless, vexatious, and an instrument of harassment. They have also expended a considerable portion of the Court's judicial resources. Accordingly, the Court believes it is necessary to impose sanctions on Fariello. *See Martin–Trigona*, 9 F.3d at 227 ("Occasionally ... the tactics of certain individuals so far exceed the bounds of tolerable litigation conduct that courts have responded with

specially crafted sanctions that impose severe limitations on the opportunity of such individuals to pursue their penchant for vexatious litigation.").

It is well-established that Rule 11 applies to *pro se* litigants, *Yosef v. Passamaquoddy Tribe*, 876 F.2d 283, 287 (2d Cir. 1989), *cert. denied*, 494 U.S. 1028, 110 S.Ct. 1474, 108 L.Ed.2d 611 (1990), and that a district court has inherent authority to sanction parties appearing before it acting in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). Although *pro se* litigants are afforded "special solicitude" in the Second Circuit, that solicitude "does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir.1988). "Pro Se filings do not serve as an 'impenetrable shield, for one acting Pro Se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Durant v. Traditional Investments, Ltd.*, 135 F.R.D. 42, 49 (S.D.N.Y.1991) (quoting *Patterson v. Aiken*, 841 F.2d 386 (11th Cir.1988)).

The plaintiff has been previously warned by the Court that sanctions may be imposed upon him if he files actions without an arguably "objectively reasonable" basis. *See Rodriguez*, 148 F.R.D. at 687–88. One sanction imposed by courts faced with similar circumstances is to require the vexatious litigant to seek leave of the Court before filing any other cases with the court. *See Martin–Trigona*, 9 F.3d at 229 (citing cases). Such pre-filing review allows a court to screen a proposed newly-filed action by the pro-se litigant, in order to determine whether it is an attempt at filing another vexatious complaint or a complaint with an arguably objectively reasonable basis. It is this kind of pre-filing review sanction that the Court now imposes upon Fariello.

Accordingly, for the foregoing reasons it is hereby

ORDERED, that the defendants' motion for summary judgment in their favor to dismiss the complaint is GRANTED; it is further

ORDERED, that the plaintiff's complaint is dismissed as a matter of law with prejudice; it is further

ORDERED, that plaintiff's motions for leave to amend the pleadings are DENIED; it is further

ORDERED, that plaintiff's motion for leave to amend the pleadings in order to add Gail Kohn as a defendant is DENIED; it is further

ORDERED, that plaintiff's motion for leave to amend the pleadings in order to elucidate the allegations against the defendants Ekadis and Freundlich is DENIED; it is further

ORDERED, that plaintiff's motion for leave to supplement the pleadings based on new evidence is DENIED; and it is further

ORDERED, that the plaintiff Salvatore Fariello is prohibited from bringing any further actions in the United States District Court for the Eastern District of New York, unless such proposed actions are first reviewed by the Court and approved for filing. The Clerk of the Court is specifically directed not to accept papers in any further actions by the plaintiff Salvatore Fariello unless prior approval by this Court is granted.

The Clerk of the Court is advised that this action closes the case.

SO ORDERED.