Elmer RITTER and Helen Ritter, Plaintiffs–Appellants,

v.

Peggy S. ROSS, County Treasurer for Rock County, Wisconsin, Stephen D. Meyer, Corporate Counsel for Rock County, Wisconsin and Rock County, a body politic in the State of Wisconsin, Defendants–Appellees.

No. 92–2220.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 27, 1993.

Decided May 7, 1993.

Thomas E. Greenwald, Ann T. Dempsey (argued), Greenwald, Connolly, Oliver, Close & Worden, Rockford, IL, for plaintiffs-appellants.

Thomas A. Schroeder, Robert Heidel (argued), Office of the Corp. Counsel, Janesville, WI, for defendants-appellees.

Before COFFEY and EASTERBROOK, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

"For want of a nail the shoe is lost, for want of a shoe the horse is lost, for want of a horse the rider is lost." George Herbert, in *Bartlett's Familiar Quotations* 270 (Emily M. Beck ed., 15th ed. 1980). And for want of $84, a homesite was lost. Specifically, for allegedly failing to pay $84.43 in back taxes, Elmer and Helen Ritter may have permanently lost thirty-eight acres in Rock County, Wisconsin.

**I.**

In 1982, the Ritters purchased an undeveloped tract of land for $30,000, intending it to serve as the site for their retirement home. In 1986 the county treasurer, Peggy Ross, notified the Ritters they still owed a part of their 1984 property taxes for this tract. The Ritters claimed they had paid the full amount by money order and sent Ross a copy of that order. Despite this and other correspondence, the two sides failed to reach an agreement.

On December 15, 1988, Ross sent the Ritters a letter stating that "the County will be taking this property because of back taxes." On July 14, 1989, the County acted on its stated intention. Ross and Stephen Meyer, Rock County's Corporate Counsel, commenced proceedings in rem to foreclose tax liens against the Ritters' property based on the $84.43 of allegedly unpaid 1984 property taxes.

One week later, the Ritters received from the County a "Notice of Commencement·of Proceedings In Rem to Foreclose Tax Liens by Rock County." This document ran forty pages and included a "List of Tax Liens of Rock County Being Foreclosed." The list included 108 parcels; the Ritters' parcel was number forty-seven and appeared on page twenty. The notice indicated that September 24, 1989, was the last day for redemption by payment of taxes; the document did not advise the Ritters that they had a right to contest the proceedings.

The Ritters did not contact the Defendants or an attorney and did not file an answer in the foreclosure proceeding. Plaintiffs explain their inaction by stating that they are "unsophisticated in legal matters" and that they never saw their name or their property on the list of tax liens.

On October 30, 1989, the County obtained a tax lien foreclosure judgment in the Rock County Circuit Court. On December 1, 1989, the County sold the property to a third party for $17,345 and kept the entire amount. It was not until February 1990 that the Ritters discovered the County had acquired and then sold their property. Subsequent to this revelation, the Ritters had their bank trace the money order they reportedly sent to pay their taxes; they found it had never been cashed.

The Ritters filed a seven-count complaint against Ross, Meyer, and Rock County on October 30, 1991, in federal district court. The Ritters alleged that Ross and Meyer each violated 42 U.S.C. § 1983 by depriving the Ritters of property without due process. These charges stem from the "Notice of

Commencement of Proceedings In Rem to Foreclose Tax Liens by Rock County," which the Ritters claim failed to provide them with notice of the pendency of the foreclosure action and of their opportunity to object. The Ritters also charged Rock County with the same violation, based solely on the County having adopted the ordinance that established the procedures for enforcing property tax liens. In addition, Plaintiffs claim Rock County violated the civil rights statute by taking property without just compensation in violation of the Fifth Amendment. The County did this, said the Ritters, by keeping all the proceeds from the foreclosure sale, not just the amount owed for taxes.[1] The additional counts were pendent state claims.

Defendants moved for summary judgment on March 12, 1992, asserting the notice of the foreclosure proceedings was adequate, that a tax lien foreclosure does not implicate the Fifth Amendment, and that adequate post-deprivation remedies were available which precluded Plaintiffs' constitutional claims. In response, the district court dismissed all of the Ritters' claims without prejudice.

The district court concluded the Ritters' constitutional claims were not "presently viable" as the Plaintiffs "failed to pursue state post-deprivation remedies." Wisconsin law provides the Ritters with a number of options to recover their land or the money from its sale, and the district court felt it could not gauge whether Plaintiffs had been deprived of their constitutional rights until the Ritters exhausted those options. Having dismissed these claims, the court also dismissed Plaintiffs' state law claims without prejudice for lack of subject matter jurisdiction.

## II.

On appeal, the Ritters argue they are not required to proceed with state post-deprivation remedies before bringing an action under the Civil Rights Act; they request this court reverse the district court and remand the cause for adjudication. We must first examine whether the district court, and indeed this court, has subject matter jurisdiction. Our examination starts by asking a

question not addressed by either party or the court below, and that is whether the *Rooker–Feldman* doctrine stands as a bar to the litigation of this dispute in federal court. *See Autocephalous Greek–Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.,* 917 F.2d 278, 284 n. 7 (7th Cir.1990) (this court on its own motion may raise issue of subject matter jurisdiction); Fed.R.Civ.P. 12(h)(3) (same).

## III.

In *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the plaintiff sought to overturn a state court decision which had been affirmed by the state's supreme court and then denied review by the United States Supreme Court. Plaintiff filed a complaint in federal district court alleging the state court decision rested on an unconstitutional state statute. The district court ruled it had no jurisdiction over the suit and the Supreme Court agreed: "[N]o court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original." *Id.* at 416, 44 S.Ct. at 150 (citations omitted).

In declaring the district court to be without jurisdiction, the Supreme Court noted the validity of the state court decision. The state circuit court had jurisdiction of the subject matter and the parties, it conducted a full hearing, and the judgment was responsive to the issues. *Id.* at 415, 44 S.Ct. at 150.

Sixty years later, the Court reaffirmed *Rooker* in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *Feldman* concerned two lawyers, Hickey and Feldman, who wished to become members of the District of Columbia bar. The lawyers petitioned the District of Columbia Court of Appeals for a waiver of the bar admission rule which required applicants to have graduated from an accredited law school. The D.C.

---

1. At oral argument the state advised that the Wisconsin delinquent tax procedures have now been modified, but this case is not affected by those subsequent changes.

Court of Appeals, the functional equivalent of a state's highest court, denied their petitions. Plaintiffs then filed complaints in United States district court challenging the denial of their petitions and the constitutionality of the bar admission rule.

In their complaints, Plaintiffs alleged the D.C. Court of Appeal's refusal to waive the bar admission requirement violated the Fifth Amendment in that it deprived them of liberty and property without due process of law. Plaintiffs also asked for a declaration that the bar requirement, as applied or on its face, violated the Fifth Amendment. The district court dismissed their complaints for lack of subject matter jurisdiction, asserting that to do otherwise would place it in the position of reviewing an order of a jurisdiction's highest court. *Id.* at 470, 103 S.Ct. at 1308. The district court explained that " 'the admission and exclusion of attorneys by the members of the highest court of a state is the exercise of a judicial function which may be reviewed only by the United States Supreme Court.' " *Id.* at 473, 103 S.Ct. at 1310 (citation omitted).

The Supreme Court agreed that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Id.* at 482, 103 S.Ct. at 1315. The Court also agreed that the proceedings in the D.C. Court of Appeals were judicial in nature. *Id.* at 479, 103 S.Ct. at 1313. "Therefore, to the extent that Hickey and Feldman sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver, the District Court lacked subject-matter jurisdiction over their complaints." *Id.* at 482, 103 S.Ct. at 1315. The Court stated, however, that the district court did have subject matter jurisdiction over plaintiffs' complaints "[t]o the extent that Hickey and Feldman mounted a general challenge to the constitutionality" of the D.C. bar admission rule. *Id.* at 482–83, 103 S.Ct. at 1314–15.

In short, the *Feldman* Court held that United States district courts may review a state court's nonjudicial action for constitutional error, but not a state court's judicial decision whether or not constitutional error is alleged:

United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court.

*Id.* at 486, 103 S.Ct. at 1317.

Taken together, *Rooker* and *Feldman* stand for the proposition that "lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 21, 107 S.Ct. 1519, 1531, 95 L.Ed.2d 1 (1987) (Brennan, J., concurring); *accord Asarco Inc. v. Kadish*, 490 U.S. 605, 622, 109 S.Ct. 2037, 2047, 104 L.Ed.2d 696 (1989) ("The *Rooker–Feldman* doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court, for such authority is vested solely in this Court.").

This statement, of course, should not be read out of context. Congress does allow federal district courts to review state judicial decisions in habeas corpus proceedings. *See* 28 U.S.C. § 2241 (habeas corpus); *Lynk v. LaPorte Superior Court*, 789 F.2d 554, 563 (7th Cir.1986) (noting habeas corpus exception). One commentator states that *Rooker–Feldman* "simply forbids federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes such review." James S. Liebman, *Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity*, 92 Colum.L.Rev.1997, 2008 n. 46 (1992).

Engaging in an impermissible appellate review may occur when a district court is asked to entertain a claim that was not even argued in the state court but is "inextricably intertwined" with the state court judgment. *Feldman*, 460 U.S. at 483 n. 16, 103 S.Ct. at 1316 n. 16; *see also Guess v. Board of Medi-*

*cal Examiners,* 967 F.2d 998, 1002–03 (4th Cir.1992) (Plaintiffs who lose in state court may not "recast their claims in federal court under the guise of federal constitutional claims that were not raised or decided by the state court ... if the constitutional claims are inextricably intertwined with the merits of the state court judgment.").

There is, unfortunately, no bright line that separates a federal claim that is "inextricably intertwined" with a state court judgment from a claim that is not so intertwined. The crucial point is whether "the district court is in essence being called upon to review the state-court decision." *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1316 n. 16. Do the constitutional claims, then, force a district court to assume appellate jurisdiction over the state court judgment? Justice Brennan, the author of *Feldman,* stated his belief in *Pennzoil* that the inferior federal courts are not forced into this impermissible appellate review when the constitutional claims are " 'separable from and collateral to' the merits of the state-court judgment." *Pennzoil,* 481 U.S. at 21, 107 S.Ct. at 1531 (Brennan, J., concurring) (citation omitted). *See generally Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589, 598–600 (7th Cir.1992) (discussing the "inextricably intertwined" standard).

It is clear, though, that a constitutional claim is not "inextricably intertwined" merely because it could have been raised, but was not, in the earlier state proceeding. If the opposite were true, the Court would not have allowed the litigants in *Feldman* to bring their general constitutional challenges to the bar admission rule in federal district court. This conclusion is further buttressed by *Pennzoil,* where separate concurrences by a majority of the Court indicated *Rooker–Feldman* would not automatically bar a federal claim that was not raised in the state court. *See Pennzoil,* 481 U.S. at 18, 107 S.Ct. at 1529 (Scalia & O'Connor, JJ., concurring); *id.* at 21, 107 S.Ct. at 1531 (Brennan, J., concurring); *id.* at 28, 107 S.Ct. at 1534 (Blackmun, J., concurring); *id.* at 31 n. 3, 107 S.Ct. at 1536 n. 3 (Stevens, J., concurring). *But cf. Leaf,* 979 F.2d at 600–01 (res judicata may bar claims where *Rooker–Feldman* does not).

With this understanding of the *Rooker–Feldman* doctrine, we now turn to the Ritters' appeal.

## IV.

█ It is settled that "a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Hagerty v. Succession of Clement,* 749 F.2d 217, 220 (5th Cir. 1984), *cert. denied,* 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985); *accord Guess v. Board of Medical Examiners,* 967 F.2d 998, 1005 (4th Cir.1992) ("Artificial attempts to redefine the relief sought are not sufficient to overcome the requirements of *Feldman.*"); *Owens–Corning Fiberglas Corp. v. Moran,* 959 F.2d 634, 635 (7th Cir.1992) (section 1983 does not automatically permit federal court to review state judicial decision); *Worldwide Church of God v. McNair,* 805 F.2d 888, 893 (9th Cir.1986) (*Feldman* applies in § 1983 context); *Lynk v. LaPorte Superior Court,* 789 F.2d 554, 563 (7th Cir.1986) (federal courts rebuff efforts to retry state suits in federal courts under section 1983).

We must distinguish whether the Ritters are asking a federal court to review the state court judgment through use of their section 1983 action or instead are mounting a general challenge to the Wisconsin statute which authorized the foreclosure of the tax lien. The Tenth Circuit aptly noted that "the distinction is often difficult to draw." *Razatos v. Colorado Supreme Court,* 746 F.2d 1429, 1433 (10th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). This difficulty is evinced by the varying outcomes courts reach when faced with similar facts. *See* Gary Thompson, Note, *The* Rooker–Feldman *Doctrine and the Subject Matter Jurisdiction of Federal District Courts,* 42 Rutgers L.Rev. 859, 880 n. 95, 881 n. 98 (1990) (listing conflicting court decisions).

Before this court the Ritters admit that but for the tax lien foreclosure judgment in Rock County Circuit Court they would have no complaint; they would still have their land and would have suffered no injury. The state court proceedings, as the Plaintiffs themselves state, "are the subject of this case." Appellants' Reply Br. at 5. The Rit-

ters, like the plaintiff in *Rooker,* are essentially seeking a federal district court appellate review of a state judicial proceeding; their claims against Defendants are inextricably intertwined with the merits of that proceeding. As in *Rooker,* the lower federal courts have no jurisdiction over this complaint. *See Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589, 598 (7th Cir.1992); *see also Guess,* 967 F.2d at 1003–04 ("A plaintiff may not relitigate in federal court a particularized challenge to an adjudication against him in state court.").

Even if the *Rooker–Feldman* doctrine were no bar to the Ritters' action, we would feel compelled to dismiss their complaint. As Judge Shabaz noted, there are a variety of options available to the Ritters in Wisconsin state courts to either overturn the state court foreclosure judgment or to recover the proceeds from the sale of their land; the Ritters, in fact, have told us they are currently involved in state court litigation concerning the foreclosure.

## V.

We conclude both this court and the district court lack subject matter jurisdiction over the Ritters' case and we therefore affirm the district court's dismissal of both their state and federal claims. Any relief for the Ritters must come from the Wisconsin judicial system and not from us.

Although we do not have jurisdiction over the present appeal, we must admit our surprise and dismay that the dispute over the Ritters' alleged back taxes was not solved in Rock County. For want of $84.43, both the Ritters and the County have now invested more money and time without a resolution of the dispute.

AFFIRMED.