MEMORANDUM AND ORDER
 

 CROW, Senior District Judge.
 

 On September 21, 1999, the plaintiff, Timothy Paul Oblander, commenced this declaratory action in federal court. The plaintiff is represented by William K. Rork. On April 2, 1999, Oblander, a former deputy sheriff for Shawnee, County, Kansas, was charged in Shawnee County, Kansas, state district court with six counts of perjury. On May 28, 1999, Judge Parrish, the state district judge presiding over his state case, issued an order disqualifying Rork as defense counsel in Oblander’s state criminal case, finding that a serious conflict of interest precluded Rork from further representation of Oblander.
 

 On August 30, 1999, Oblander filed a petition for Writ of Mandamas in the Kansas Supreme Court, arguing that disqualifying Rork would deny his constitutional right to counsel of choice. On September 10, 1999, the Kansas Supreme Court denied Oblander’s petition for Writ of Man-damas.
 

 On September 21, 1999, Oblander commenced this action in federal court seeking declaratory and injunctive relief, essentially claiming that Judge Parrish’s ruling violates his constitutional right to counsel of his choice and that this forum provides the only effective means of vindicating that right. On the same day that Oblander commenced this action, Sheriff David Meneley, who is also charged in Shawnee County, Kansas, state district court with committing perjury, also commenced an almost identical action in federal court. William Rork also represents Sheriff Meneley. That case was randomly assigned to Judge Saffels. On September 24, 1999, Judge Saffels denied Sheriff Meneley’s motion for temporary restraining order and preliminary injunction, finding no likelihood of success on the merits.
 

 On September 28, 1999, this court conducted a hearing to consider the plaintiffs motion for a temporary restraining order. At the conclusion of the hearing the court orally announced its intention to dismiss this case for lack of jurisdiction under the
 
 Rooker-Feldman
 
 doctrine.
 

 At the conclusion of the September 28, 1999, hearing, the court indicated that it would issue a memorandum and order more fully explaining its ruling. Unfortunately, all copies of the first draft of this memorandum and order have been lost— both the hard copy and the version stored on the court’s computer system. The vain hope of the original draft miraculously reappearing in one form or another having evaporated, the court now issues this memorandum and order to explain its ruling.
 

 No Absolute Right to Counsel of Choice
 

 In
 
 United States v. Mendozar-Salgado,
 
 964 F.2d 993 (10th Cir.1992), the Tenth Circuit discussed a criminal defendant’s right to counsel of choice:
 

 
 *1218
 
 The Sixth Amendment guarantees that “[i]n all criminal prosecutions, the accused shall ... have the assistance of counsel for his defense.” U.S. Const, amend. VI.... “[T]he right to counsel of choice has been described as an ‘essential component’ of the sixth amendment right to counsel.”
 
 United States v. Nichols,
 
 841 F.2d 1485, 1501 (10th Cir. 1988).[FN12] An accused should “ ‘be afforded a fair opportunity to secure counsel of his own choice,’ ”
 
 [United States v.] Collins,
 
 920 F.2d 619 at 624-25 [(10th Cir.1990),
 
 cert. denied,
 
 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991)]
 
 (quoting Powell v. Alabama,
 
 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932)), and “ ‘must be given a reasonable opportunity to employ and consult with counsel; otherwise the right to be heard by counsel would be of little worth.’ ”
 
 Id.
 
 at 625 n. 7
 
 (quoting Glasser v. United States,
 
 315 U.S. 60, 75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942)). The right to privately retain counsel of choice derives from a defendant’s right to determine the type of defense he wishes to present.
 
 Collins,
 
 920 F.2d at 625;
 
 Nichols,
 
 841 F.2d at 1502. Lawyers are not fungible, and often “ ‘the most important decision a defendant makes in shaping his defense is his selection of an attorney.’ ”
 
 Collins,
 
 920 F.2d at 625
 
 (quoting Nichols,
 
 841 F.2d at 1502). In situations where a defendant is able to privately retain counsel, “the choice of counsel rests in his hands, not in the hands of the state.”
 
 Id.
 
 In criminal cases, the right to retain counsel of choice becomes a question of fundamental fairness, “the denial of which may rise to a level of a constitutional violation.”
 
 Id.
 
 at 625;
 
 see also Strickland v. Washington,
 
 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984). A conviction attained when a court “unreasonably or arbitrarily interferes with an accusedf’s] right to retain counsel of choice ... cannot stand, irrespective of whether the defendant has been prejudiced.”
 
 Collins,
 
 920 F.2d at 625.
 

 FN12. A defendant’s right to secure counsel of choice is cognizable only to the extent defendant can retain counsel with private funds.
 
 United States v. Collins,
 
 920 F.2d 619, 625 n. 8 (10th Cir.1990),
 
 cert. denied,
 
 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). In contrast, “ ‘an indigent defendant doe,s not have a right to choose appointed counsel.’ ”
 
 Id. (quoting Nichols,
 
 841 F.2d at 1485). Regardless of whether counsel is retained or appointed, both are held to the same standards of professional competence.
 
 Id.
 

 However, the courts have long recognized limits on the right to counsel of choice, stating “[t]he precise contours of this right ... have not yet been determined,”
 
 Nichols,
 
 841 F.2d at 1501, and the “right to retain counsel of ... choice is not absolute,”
 
 Collins,
 
 920 F.2d at 625;
 
 see also Nichols,
 
 841 F.2d at 1502 (also noting in n. 7 at 1501, that the Supreme Court has never decided a case squarely on the basis of the right to counsel of choice);
 
 Powell,
 
 287 U.S. at 53, 53 S.Ct. at 58 (defendant’s right to choose his own attorney is limited to “fair opportunity” to obtain counsel of choice). A defendant may not insist upon counsel of choice in a manner which obstructs orderly procedure in the courts or deprives courts of the exercise of their inherent powers to control the orderly course of justice.
 
 Collins,
 
 920 F.2d at 625.
 

 While we recognize the right to choose and be represented by one’s preferred attorney is encompassed by the Sixth Amendment, the Supreme Court reminds us that the “essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.”
 
 Wheat v. United States,
 
 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988)
 
 *1219
 
 (emphasis added);
 
 see also Collins,
 
 920 F.2d at 625-26 (and cases cited therein). However, the court must respect a defendant’s choice of retained counsel “ ‘unless it would unreasonably delay proceedings or burden the court with retained counsel who was incompetent or unwilling to abide by court rules and ethical guidelines.’ ”
 
 Collins,
 
 920 F.2d at 626
 
 (quoting United States v. Panzardi Alvarez,
 
 816 F.2d 813, 818 (1st Cir. 1987)). In short, courts may deprive defendants of their preferred counsel “ ‘only where such drastic action is necessary to further some overriding social or ethical interest.’ ”
 
 Id.
 
 at 626
 
 (quoting United States v. Hobson,
 
 672 F.2d 825, 828 (11th Cir.),
 
 cert. denied,
 
 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982)).
 

 Therefore, the courts must “balance a defendant’s constitutional right to retain counsel of ... choice against the need to maintain the highest standards of professional responsibility, the public’s confidence in the integrity of the judicial process and the orderly administration of justice.”
 
 Collins,
 
 920 F.2d at 626;
 
 see also Nichols,
 
 841 F.2d at 1503-04. In weighing this balance, courts may consider whether a continuance to allow one’s preferred attorney to handle the case “would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay”; or whether the defendant contributed to the circumstances which gave rise to the request for a continuance.
 
 United States v. Kelm,
 
 827 F.2d 1319, 1322 n. 2 (9th Cir.1987). Similarly, courts may consider whether defendant has other competent counsel prepared to try the case, with attention to whether defendant obtained the other counsel as lead or associate counsel; whether rejecting defendant’s request for delay will result in identifiable prejudice to his case; whether this prejudice constitutes a material or substantial harm; and whether the complexity of the action or other relevant factors peculiar to the specific case necessitates further delay.
 
 United States v. Burton,
 
 584 F.2d 485, 491 (D.C.Cir.1978),
 
 cert. denied,
 
 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).
 

 Id.
 
 at 1014-15.
 

 Rooker-Feldman Doctrine
 

 In
 
 Mounkes v. Conklin,
 
 922 F.Supp. 1501 (D.Kan.1996), this court summarized the principles of the
 
 Rooker-Feldman
 
 doctrine:
 

 It is an axiom that federal district courts exercise only original jurisdiction; they lack appellate jurisdiction to review state court decisions reached in judicial proceedings.
 
 District of Columbia Court of Appeals v. Feldman,
 
 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983);
 
 Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923). The
 
 Rooker
 
 [FN3] and
 
 Feldman
 
 decisions have become known as the
 
 Rooker-Feldman
 
 doctrine.
 
 Musslewhite v. State Bar of Texas,
 
 32 F.3d 942, 946 n. 11 (5th Cir.1994),
 
 cert. denied,
 
 515 U.S. 1103, 115 S.Ct. 2248, 132 L.Ed.2d 256 (1995);
 
 Fariello v. Campbell,
 
 860 F.Supp. 54, 65 (E.D.N.Y.1994).
 

 FN3. In
 
 Rooker,
 
 the plaintiff filed a federal suit to overturn a state court decision which had been affirmed by that state’s highest court and which had been denied review by the United States Supreme Court. The federal district court dismissed the case for lack of subject matter jurisdiction, and the Supreme Court affirmed saying: “[N]o court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original.” 263 U.S. at 416, 44 S.Ct. at 150.
 

 In
 
 Rooker,
 
 the Court said that Congress in enacting 28 U.S.C. § 1257 had
 
 *1220
 
 foreclosed federal courts, other than the Supreme Court, from reviewing final judgments of state courts. 263 U.S. at 416, 44 S.Ct. at 150. Federal district courts, as courts of original jurisdiction, lack authority to review state court decisions.
 
 Worldwide Church of God v. McNair,
 
 805 F.2d 888, 890 (9th Cir. 1986) .
 
 Rooker
 
 effectively serves as “an independent basis for prohibiting collateral attack on state court judgments.”
 
 U.S. Industries, Inc. v. Laborde,
 
 794 F.Supp. 454, 462 (D.Puerto Rico 1992).
 

 In
 
 Feldman,
 
 the Supreme Court extended that rule to a state court’s final judgment in a bar admission matter. [FN4] Specifically, the Court in
 
 Feldman
 
 held that federal district courts do not have jurisdiction “over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court’s action was unconstitutional.” 460 U.S. at 486, 103 S.Ct. at 1317. “The
 
 Feldman
 
 rule is soundly and. clearly based in the language of 28 U.S.C. § 1257 and in the public policy of federalism.”
 
 Facio v. Jones,
 
 929 F.2d 541, 545 (10th Cir.1991);
 
 see DeVargas v. Montoya,
 
 796 F.2d 1245, 1255 (10th Cir.1986) (As a matter of federal-state comity, the district court does not look behind the state court judgment), overruled on other grounds,
 
 Newcomb v. Ingle,
 
 827 F.2d 675, 678 (10th Cir. 1987) .
 

 FN4. In
 
 Feldman,
 
 the plaintiffs wanted waivers from the District of Columbia’s rule that required all bar applicants to have degrees from accredited law schools. Unsuccessful in state court, the plaintiffs sued in federal court asserting constitutional right violations.
 

 The reach of the
 
 Rooker-Feldman
 
 doctrine is substantial. It is not limited to the decisions coming from the state’s highest court.
 
 Dubinka v. Judges of Superior Court,
 
 23 F.3d 218, 221 (9th Cir.1994). Nor does it matter whether the state court decisions are final or interlocutory.
 
 Gentner v. Shulman,
 
 55 F.3d 87, 89 (2nd Cir.1995). The doctrine precludes federal jurisdiction even when the state court’s decision implicates federal constitutional issues,
 
 id.,
 
 or when the plaintiff brings his federal action under federal civil rights statutes,
 
 Ritter v. Ross,
 
 992 F.2d 750, 754 (7th Cir.1993),
 
 cert. denied,
 
 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994);
 
 see, e.g., Facio v. Jones,
 
 929 F.2d at 544;
 
 DeVargas v. Montoya,
 
 796 F.2d at 1255. Finally, the doctrine applies to attempts not only to review directly a state court decision but also to review indirectly a state court decision when the federal claim is “inextricably intertwined” with the merits of the state court’s decision.
 
 Dubinka,
 
 23 F.3d at 221;
 
 Facio,
 
 929 F.2d at 543.
 

 “The only exception to ... the
 
 Rook-er-Feldman
 
 doctrine, is where a federal statute authorizes federal appellate review of final state court decisions.”
 
 Fariello,
 
 860 F.Supp. at 65;
 
 see Ritter v. Ross,
 
 992 F.2d 750, 753 (7th Cir.1993)
 
 (“Rooker-Feldman
 
 ‘simply forbids federal district court appellate review of state court judgments in the guise of collateral attacks when no federal statute authorizes such review.’ ”)
 
 (quoting James S. Liebman, Apocalypse Next Time?: The Anachronistic Attack on Habeas Corpus/Direct Review Parity,
 
 92 Colum.L.Rev.1997, 2008 n. 46 (1992)),
 
 cert. denied,
 
 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994). For example, Congress authorized federal district courts to review state court decisions in habeas corpus proceedings.
 
 Ritter,
 
 992 F.2d at 753;
 
 Fariello,
 
 860 F.Supp. at 65;
 
 see Illinois Legislative Redistricting Commission v. LaPaille,
 
 786 F.Supp. 704, 710 (N.D.Ill.) (the exception to
 
 Rooker-Feldman
 
 is habeas corpus cases),
 
 aff'd,
 
 506 U.S. 948, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992).
 

 Id.
 
 at 1508-09. The
 
 Rooker-Feldman
 
 doctrine is jurisdictional and cannot be waived.
 
 See Snodderly v. Kansas,
 
 79
 
 *1221
 
 F.Supp.2d 1241, 1247 (D.Kan.1999) (citations omitted).
 

 Analysis
 

 Oblander’s complaint presents a prototypical example of a case barred by the
 
 Rooker-Feldman
 
 doctrine. “In the typical case discussing the
 
 Rooker-Feldman
 
 doctrine, a litigant unhappy with the decisions of the state district or appellate court simply commences an action in federal district court similar or identical to the one just lost in state court — essentially hoping to achieve greater success on the second try in a more obliging forum. Subject to limited exceptions where Congress has authorized collateral review of state court judgments, such a strategy runs quickly ashore on the shoals of the
 
 Rooker- Feldman
 
 doctrine.”
 
 Snodderly,
 
 79 F.Supp.2d at 1247. This is such a case. Having lost in state district court, and unable to obtain the relief sought from the Kansas Supreme Court in his petition for mandamus, Oblander has turned to the federal district court in the hope of a more expedient and favorable ruling. This he cannot do. In short, federal district courts do not sit as super-appellate courts to the state courts.
 

 Oblander is not left without any remedy. If convicted, Oblander can challenge the district court’s order disqualifying counsel in his appeal to the Kansas appellate courts,
 
 see State v. Donahue,
 
 25 Kan. App.2d 480, 967 P.2d 335 (1998), and if still dissatisfied, seek certiorari from the United States Supreme Court. Oblander cannot by bypass or shortcut that route by initiating this action in federal district court. Although the proper course for obtaining the relief he seeks is not the one which Oblander desires to take, this court lacks jurisdiction to provide a more expedient path. Oblander’s complaint is dismissed for lack of jurisdiction.
 

 IT IS THEREFORE ORDERED that Oblander’s complaint is dismissed for lack of jurisdiction pursuant to the
 
 Rooker-Feldman
 
 doctrine.