**Alfred A. ZEALY, Plaintiff,**

v.

**CITY OF WAUKESHA, Defendant.**

**No. 00–C–994.**

United States District Court,
E.D. Wisconsin.

Aug. 6, 2001.

James W. Hammes, Cramer Multhauf & Hammes Waukesha, WI, for plaintiff.

Raymond J. Pollen, Michele M. Ford, Crivello, Carlson, Mentkowski & Steeves, S.C., Milwaukee, WI, for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

Alfred Zealy is suing the City of Waukesha, Wisconsin for violating his right to due process by depriving him of consideration allegedly due him under an easement contract. Zealy owns 10.38 acres of land within the City, part of which was rezoned as a wetland conservancy district. The Plaintiff says that the Defendant has refused to compensate him for an easement he granted to the City prior to the rezoning so he is now seeking relief pursuant to 42 U.S.C. § 1983. The Defendant has answered and has denied liability. After the deadline for the completion of all discovery, both parties moved for summary judgment on the grounds that no material facts are in dispute and that the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(c).

## I. *FACTS*

Plaintiff Alfred Zealy is the beneficial owner [1] of a 10.38 acre parcel of land which

---

1. In his Affidavit, Zealy reveals:

That on December 11, 1996, I established the Alfred A. Zealy Revocable Trust, that I was the sole settlor of the trust, and, at all times, have, and remain, the sole beneficiary and trustee of the Alfred A. Zealy Revocable Trust. That subsequent to the establishment of the Alfred A. Zealy Revocable Trust, I executed a Quit Claim Deed assign-

ing my individual interest in the 8.3 acres, which is the subject matter of this litigation, to the Alfred A. Zealy Revocable Trust. The trust can be revoked at any time, upon my discretion or determination, and, upon such revocation, fee title of the 8.3 acres would revert to me, individually.

That the Alfred A. Zealy Revocable Trust, and the transfer of the 8.3 acres, was un-

was annexed by the City in 1967. After annexation, the land was temporarily zoned as residential. Nevertheless, throughout the events giving rise to this action, the parcel has been used by the Zealy family for growing crops in a truck farming operation and for the mining of topsoil.

On March 16, 1982, the Plaintiff and his predecessors-in-title executed an easement agreement in favor of the City of Waukesha. Zealy claims that, as an inducement to entering into this contract, the City of Waukesha represented to him that, if the easement were granted, the property could be developed for residential purposes; that the development could be connected to the sanitary sewer main; and that no special assessments would be levied against the property as a result of the installation of the sanitary sewer main. Zealy says that, during the negotiations, he told the City that he intended to construct a multi-family residence on the property. Pursuant to the terms of the easement agreement, the City of Waukesha was authorized to, and did subsequently, construct a storm sewer and sanitary sewer easement across a portion of the property.

Meanwhile, the City was attempting to develop a plan to protect and manage wetlands in and adjacent to the City. A plan was recommended, but never fully adopted. Nevertheless, in 1985, the City decided to rezone the wetlands (which included approximately 8.2 acres of Zealy's parcel) as a conservancy. The rest of Zealy's property was zoned for residential and commercial use. The City of Waukesha acknowledged that it had made prior commitments to some owners of property subject to conservancy zoning and that the

City would be required to compensate them. Zealy contends that he is one of those property owners, while the City asserts that it had made no prior commitments to him.

In 1990, believing that the City would not compensate him for his property, the Plaintiff initiated an inverse condemnation proceeding pursuant to Section 32.10 of the Wisconsin Statutes. The action made its way through the state courts until, in 1996, the Supreme Court of Wisconsin ruled that the inverse condemnation action was not ripe, and that the City of Waukesha had not effected a taking of the Plaintiff's property. *See Zealy v. City of Waukesha,* 201 Wis.2d 365, 548 N.W.2d 528 (1996). Four years later, Zealy commenced this civil rights action in federal court where the parties' cross motions for summary judgment are now ready for decision.

## II. *LEGAL STANDARDS FOR CROSS MOTIONS FOR SUMMARY JUDGMENT*

Under Federal Rule of Civil Procedure 56(c), a trial judge must grant summary judgment if the evidence offered demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party initially must inform the court of the basis for its motion and identify "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that the movant believes demonstrate the absence of a genuine is-

---

dertaken for estate planning purposes, and for no other purpose.

That at no time have I assigned or transferred to the Alfred A. Zealy Revocable Trust any rights, claims, or causes of action

which I may have, and which in any way arise out of, or relate to, the taking of contract rights or easement rights granted to me by the City of Waukesha by virtue of the easement dated March 16, 1982.

sue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 333, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 56(c)); *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 153, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A "genuine" factual issue is one that properly can be resolved only by a finder of fact because it may reasonably be resolved in favor of either side. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

■ Merely because all the parties in a case move for summary judgment does not mean that any party must prevail. *See Home Insurance Company v. Aetna Casualty & Surety Company,* 528 F.2d 1388, 1390 (2d Cir.1976) (per curiam). If no party demonstrates that summary judgment in its favor is warranted, no motion will be granted. *See e.g., Schwabenbauer v. Board of Education,* 667 F.2d 305, 313–14 (2d Cir.1981). The court must consider each party's motion separately and decide whether that party is entitled to judgment as a matter of law.

When the moving party bears the ultimate burden of proof on an issue upon which it seeks summary judgment, it has met its burden by showing sufficient evidence to justify a verdict in its favor. In contrast, when the moving party does not bear the ultimate burden of proof on an issue, it has met it burden by indicating that the nonmoving party has failed to adduce sufficient evidence to raise a genuine issue of material fact about the issue.

*See Catrett,* 477 U.S. at 322–24, 106 S.Ct. 2548.

Once a movant meets its initial burden, thereby establishing a *prima facie* case for summary judgment, the opponent of the motion must adduce enough evidence to support a jury verdict in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. The sufficiency of this evidence implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. Thus, in a civil case such as this, the record must show that the trier of fact could find by a preponderance of the evidence that the movant is entitled to judgment. *See Id.* at 252, 106 S.Ct. 2505.

The nonmovant cannot rest upon the allegations in its pleading, but must set forth specific facts showing that here is a genuine issue for trial. *See First National Bank of Cicero v. Lewco Securities Corporation,* 860 F.2d 1407, 1411 (7th Cir.1988). In assessing whether there are any factual issues to be tried, a court must view the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam). If the nonmovant's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id.* at 249–50, 82 S.Ct. 993.

Guided by these standards, the court will now proceed to determine whether either movant is entitled to judgment under the applicable law.

### III. *DISCUSSION AND DECISION*

#### A. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

#### 1. Formulation of Zealy's Claim

The Plaintiff has moved for a summary judgment of liability (therefore, partial

summary judgment). He says that the City of Waukesha, acting under color of state law, deprived him of contract rights granted by virtue of the easement contract entered into between the parties on March 16, 1982. As a result, Zealy concludes, that he has been denied due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. *See* Brief in Support of Plaintiff's Motion for Summary Judgment at 4. He argues that, because the Wisconsin Supreme Court ruled that there had been no taking and that the easement was not a protected property right under the Wisconsin Constitution, he has no remedy under state law. He has brought this due process claim in federal court because he believes that: "the constitutional guarantees afforded him by the Fifth and Fourteenth Amendments to the United States Constitution extend beyond the limited guarantees afforded Zealy by the Wisconsin Constitution." *Id.* at 10.[2]

Zealy's theory of recovery has been unclear and elusive throughout this case. In his federal Complaint, he set forth his cause of action as follows:

> That the Defendant, acting under a color of law, has taken from the Plaintiff all, or substantially all, reasonable use of those portions of the Plaintiff's Property which were rezoned from the R–1 Residential zoning classification to the C–1 Conservancy zoning classification, and the Defendant's actions, together with the Defendant's refusal to compensate the Plaintiff for that taking, has deprived the Plaintiff of due process of law and equal protection of the laws, which rights are afforded the Plaintiff in accordance with the Fifth and Fourteenth Amendments of the United States Constitution.

Complaint at ¶ 16. When the Defendant, not surprisingly, proceeded on the theory that this is a Takings Clause case, the Plaintiff shifted position. Restating his claim in response to the Defendant's motion for summary judgment, the Plaintiff explained that:

> The City's argument is based upon either its misunderstanding or mischaracterization of Zealy's claim. Zealy does not seek to overturn the findings made by the Wisconsin Supreme Court as it relates to whether the enactment of the C–1 conservancy zoning ordinance constituted a regulatory taking of his property. Rather, Zealy, having exhausted all State court remedies, seeks redress in the federal court in accordance with the provisions of 42 U.S.C.1983.
>
> Zealy's claim relates to the taking of the consideration which supported the easement contract between Zealy and the City. The fact that the taking may have resulted from the rezoning of the underlying property is not dispositive of the issue presented in this proceeding.

Response Brief at 7. During his deposition, Zealy engaged in the following exchange with the Defendant's counsel concerning the nature of his claim:

Q. Okay. Now, this easement agreement, in what way did the City not live up to the easement agreement?

A. When my father died, we wanted to get—develop the land, and Rodney Vanden Noven came to the house to et [sic] an easement to put through. And we told him that—what are they going to give us, and he said he would make up an easement and come back. This was in 1981. And he came back with this easement stating that here is an easement.

---

**2.** Zealy conveniently ignores the fact that the Wisconsin Supreme Court concluded that he had no claim under the United States Constitution as well as the Wisconsin Constitution. *See generally Zealy v. City of Waukesha,* 201 Wis.2d 365, 548 N.W.2d 528 (1996).

And we said what are you giving us to make this thing go through, and he said—because all he was talking about before with my father and everybody was the storm water, because the storm water backed up across the street and into the subdivision because it went underneath Racine Avenue and stopped at our land, and the people were lays [sic] getting flooded out. So in order to solve that problem he wanted an easement to continue the storm sewer through our land, and we said no, that we're not getting anything out of it.

He said we'll—he came with this plat and showed us that here's a plat of your land, and we'll put the storm sewer down here through the road, and we'll include a sanitary sewer on which he will not charge you an assessment. And your people, when you develop the land, can hook up to the sanitary sewer.

And I said in that case that sounded all right, but I said we wanted to go with a multi-family. He said he can't do that, the City has to approve multi-family. But we said—but he said you can have this, here's a plat that you can develop, and then when you're ready, you can go back to the City to get a rezoning if you want it.

With that in mind, with the easement for the sanitary sewer and the water and no assessment charge to us, we agreed to the easement. And they did not live up to it because the very next year they rezoned the land and said I couldn't develop it, and that's the whole crux of this whole—

Deposition of Alfred A. Zealy at 38–40.

Finally, in his reply brief, Zealy enumerates the "promises" that constitute the consideration Zealy believes is due him from the City for the granting of the sewer easement. He says that:

Rodney Vandennoven [sic] represented to Zealy that "... you can have this, here's a plat that you can develop, and then when you're ready, you can go back to the City to get a rezoning if you want to." The "plat" Vandennoven referred to is, of course, the exhibit appended to the easement agreement which depicts the residential development of Zealy's property. Furthermore, Vandennoven advised Zealy that when he (Zealy) was ready to develop the property, a rezoning of the property from the R–1 Residential zoning classification to a multifamily zoning classification could be requested, but that the property could be developed under the R–1 Residential zoning classification even if the City did not allow a rezoning for a multi-family use.

These promises constituted *the* consideration Zealy received from the City for the granting of the sanitary sewer easement. The subsequent rezoning of the 8.3 acres of land from a R–1 Residential zoning classification to a C–1 Conservancy zoning classification deprived Zealy of the consideration which he received from the City and which supported the easement agreement. The City represented, at the time of rezoning, that it was undertaking the rezoning activity for the purpose of preserving the property, and that it would purchase Zealy's property at a later date. When the City refused to honor its commitment, Zealy commenced the State Court proceeding.

Plaintiff's Summary Judgment Reply Brief at 6–7. The City denies that these promises were made to Zealy and shows that they were not included in the written easement contract. *See* 2/28/01 Affidavit of Michele M. Ford at Exhibit 7. The Defendant also points out that any agreement to convey the Zealy land would have had to be in writing to satisfy the statute of frauds. *See* Wis.Stat. § 706.02.

## 2. Substantive Due Process

■ Having lost his Takings Clause[3] claim in the Wisconsin Supreme Court, Zealy has now recast his claim as one for deprivation of due process. Nowhere does he disclose whether he is seeking procedural or substantive due process.[4] However, he does not argue that he did not have a meaningful opportunity to present his claim under state law. Instead, he says that, because he lost his case under Wisconsin law, he has no adequate state remedy.[5] Due process, however, requires only that a person have a meaningful opportunity to present his claims: it does not guarantee success. See American National Bank & Trust Company v. City of Chicago, 826 F.2d 1547, 1550 (7th Cir.), cert. denied, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). In any case, Zealy apparently believes that he should not be deprived of his contract rights despite any available state process. Therefore, he is invoking substantive due process.

■ It is true, as Zealy argues, that the property rights protected by due process are more extensive than those protected by the Takings Clause. See Pittman v. Chicago Board of Education, 64 F.3d 1098, 1104 (7th Cir.1995), cert. denied, 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); Pro–Eco, Inc. v. Board of Commissioners of Jay County, Indiana, 57 F.3d 505, 513 (7th Cir.), cert. denied, 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). While the Seventh Circuit has held that the Takings Clause does not protect mere contract rights, see Peick v. Pension Benefit Guaranty Corporation, 724 F.2d 1247, 1276 (7th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984), it has held that some contract rights are protected by due process. See, e.g., Ulichny v. Merton Community School District, 249 F.3d 686, 699 (7th Cir.2001). However, not all property interests worthy of procedural due process protection are protected by the concept of substantive due process. A plaintiff must have been deprived of a particular quality of property interest. See Nicholas v. Pennsylvania State University, 227 F.3d 133, 139–40 (3d Cir.2000).

■ The Seventh Circuit has explained that the term "substantive due process" is a term that has been attached to a new doctrine "that insulates fundamental rights from governmental intrusion. Some things a government cannot do at all, no matter the justification." Gosnell v. City of Troy, Illinois, 59 F.3d 654, 657 (7th Cir.1995). Both the United States Supreme Court and the Seventh Circuit have been reluctant to expand the concept beyond fundamental rights. See Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Gosnell, 59 F.3d at 657–58. The Seventh Circuit has recognized that a substantive due process claim can be brought in the context of property interests, see New Burnham Prairie Homes, Incorporated v. Village of Burnham, 910 F.2d 1474, 1480 (7th Cir. 1990). However, a plaintiff is required to

---

3. The Takings Clause is found in the Fifth Amendment ("nor shall private property be taken for public use, without just compensation"). It has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment.

4. Although Zealy claims that the City's rezoning of his property extinguished his right to the consideration allegedly due from the easement contract, he has made no argument that the Constitution's Contract Clause applies. See U.S. Const. art. 1, § 10, cl. 1 ("No State shall ... pass any ... Law impairing the Obligations of Contracts.").

5. The Plaintiff's argument is circular and confusing because he has confused the Takings Clause remedy (just compensation) with the procedural due process remedy of notice and an opportunity to be heard.

show that the governmental decision (in this case, to rezone a portion of the Zealy property) was arbitrary and unreasonable [6] and must allege a violation of some other substantive constitutional right or that the available state remedies are inadequate. *Id.* at 1481. The court of appeals has also warned that: "developers cannot move land-use disputes to federal court by crying 'substantive due process.' That doctrine is not 'a blanket protection against unjustifiable inferences with property.'" *Gosnell,* 59 F.3d at 655, *quoting Schroeder v. City of Chicago,* 927 F.2d 957, 961 (7th Cir.1991).

■ In moving for a summary judgment of liability, Zealy has failed to establish that he has a cognizable substantive due process claim. While he has recited and re-recited the facts of his case trying to differentiate his claim from a Takings Clause claim, he has ignored the complex demands of the applicable law. He has not shown that his contract rights are "fundamental," under the test set forth in *Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). *See Khan v. Gallitano,* 180 F.3d 829, 836 (7th Cir.1999) ("the *Glucksberg* fundamental rights analysis generally applies in substantive-due-process cases"). And, he has not addressed the Seventh Circuit's criteria for maintaining a substantive due process property deprivation claim. As a result, Zealy has not demonstrated that he is entitled to a judgment of liability as a matter of law, so the court will deny his motion.

## B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

■ The City of Waukesha's motion for summary judgment raises a number of threshold issues, including whether this action should be dismissed for lack of jurisdiction because it is barred by the *Rooker–Feldman* doctrine and whether the Plaintiff's claims are barred by the doctrine of claim preclusion. Because the *Rooker–Feldman* doctrine is jurisdictional in nature, its applicability can end the litigation in federal court leaving the court with no authority to address affirmative defenses, including claim preclusion. *See Centres, Inc. v. Town of Brookfield, Wisconsin,* 148 F.3d 699, 703 (7th Cir.1998). Thus, the applicability of the *Rooker–Feldman* doctrine must be determined before considering claim preclusion. *See Id.* However, because resolution of both of these issues depends upon the fact that Zealy prosecuted a prior state case, the court will first review the proceedings in that case.

### 1. Prior State Litigation

When Zealy believed that he would not receive the benefit of his easement bargain, he commenced an inverse condemnation action in the Wisconsin courts. The Wisconsin Supreme Court traced the action's procedural history through the lower state courts:

> Zealy brought an inverse condemnation action against the City, claiming that its rezoning of his land constituted a regulatory taking without compensation, and that the City should be equitably estopped from enforcing the rezoning because of Zealy's reliance on its representations. The circuit court dismissed Zealy's claims on both issues. With respect to the first issue, the circuit court concluded that Zealy's parcel should be considered as a whole in determining whether a taking occurred. On appeal, the court of appeals held that the circuit

---

**6.** The Seventh Circuit has defined arbitrary and unreasonable as "invidious" or "irrational." *Pro–Eco v. Board of Commissioners of Jay County, Indiana,* 57 F.3d 505, 514 (7th Cir.), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995).

court had erred when it considered the parcel as a whole, and reversed and remanded for a new trial. *See Zealy,* 194 Wis.2d at 706, 718, 534 N.W.2d 917.

*Zealy v. City of Waukesha,* 201 Wis.2d 365, 371, 548 N.W.2d 528, 530 (1996).

The Wisconsin Supreme Court granted the City's petition for review. While conceding that the inverse condemnation claim was not ripe because Zealy had never sought to have his property rezoned, the court nevertheless decided to address his claim as a Takings Clause claim in the interests of justice. *See Id.* at 372, 548 N.W.2d at 530–31. The court formulated the issue as "whether the City's ordinance constituted a taking of Zealy's property without compensation." *Id.,* 548 N.W.2d at 531. Citing the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, the court focused on the Takings Clause which provides that property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. After an extensive review of Supreme Court jurisprudence, the Wisconsin court concluded that, in determining whether a taking has occurred, a court must consider the parcel of land as a whole and must determine whether the owner has been deprived of all or substantially all of the value of the land.[7] The court then ruled that: "We cannot conclude that the City's rezoning deprived Zealy of all or substantially all of the use of his land. Without any such loss to the landowner, a taking cannot occur. We therefore conclude that the circuit court correctly granted summary judgment against Zealy on this issue." *Id.* at 380, 548 N.W.2d at 534.

**2. The Rooker–Feldman Doctrine**

■■ While 42 U.S.C. § 1983 creates a civil cause of action against public officials for violating a person's constitutional rights, that cause of action is constrained by the jurisdictional principles of the *Rooker–Feldman* doctrine. The *Rooker–Feldman* doctrine derives from two cases of the United States Supreme Court which hold that lower federal courts have no authority to grant collateral review of a state court civil judgment or of claims "inextricably intertwined" with a state court determination. Instead, a litigant who has lost in state court must seek review in the United States Supreme Court. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Company,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The *Rooker–Feldman* doctrine bars federal jurisdiction when the federal plaintiff alleges that his injury was caused by a state court judgment. *See Remer v. Burlington Area School District,* 205 F.3d 990, 996 (7th Cir.2000). The Seventh Circuit has explained that:

> The *Rooker–Feldman* doctrine precludes federal jurisdiction over these claims because, no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment.

*Id.* The doctrine precludes jurisdiction over "inextricably intertwined" claims even when those claims were never argued in the state court. In deciding whether the *Rooker–Feldman* doctrine applies: "The pivotal inquiry is 'whether the federal plaintiff seeks to set aside a state court

---

**7.** The Wisconsin Court's 1996 ruling in *Zealy* is consistent with last Term's United States Supreme Court decision in *Palazzolo v. Rhode Island,* —— U.S. ——, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001).

judgment or whether he is, in fact, presenting an independent claim.'" *Long v. Shorebank Development Corporation,* 182 F.3d 548, 554 (7th Cir.1999) (quoting *Boston Corporation,* 92 F.3d 506, 510 (7th Cir.1996)).

▮ Zealy's claim that the City deprived him of his easement contract rights by rezoning part of his property is either the same Takings Clause claim decided by the Wisconsin Supreme Court with a different label or it is inextricably intertwined with that claim. The alleged contract right is one of a bundle of rights associated with the real property that Zealy formerly claimed had been taken by the City. It is not an independent claim. As the Seventh Circuit has warned: "a litigant may not attempt to circumvent the effect of *Rooker–Feldman* and seek a reversal of a state court judgment simply by casting the complaint in the form of a civil rights action." *Long,* 182 F.3d at 557.

▮ Nevertheless, Zealy's situation does not fit neatly into the *Rooker–Feldman* doctrine as interpreted by the Seventh Circuit. That court, believing that the *Rooker–Feldman* doctrine ought to be kept distinct from *res judicata,* has advised that *Rooker–Feldman* "ought to be confined to cases in which the defendant in the state court is seeking to undo a remedial order of some court (ordinarily a criminal conviction or an injunction)." *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995). The court went on to explain that: "When a plaintiff seeks to relitigate a suit that has been decided against him, he is not so much attacking as trying to bypass the judgment in that suit; and the doctrine that blocks him is *res judicata.*" *Id.* Res judicata, rather that the *Rooker–Feldman* doctrine will bar a federal plaintiff's claims if "the second complaint shows that the

plaintiff wants to ignore rather than upset the judgment of the state tribunal." *Homola v. McNamara,* 59 F.3d 647, 650 (7th Cir.1995).

Zealy's case is further complicated by the fact that his Takings Clause claim was only complete when the Wisconsin Supreme Court finally ruled that there had been no taking and that he was not entitled to compensation for the diminished value of his property. *See SGB Financial Services, Inc. v. Consolidated City of Indianapolis–Marion County, Indiana,* 235 F.3d 1036, 1037 (7th Cir.2000) ("If the state offers a forum that will decide whether a taking has occurred and, if so, will fix just compensation—that is, if the state entertains inverse-condemnation suits—it is hard to see how the state could be thought in violation of the Constitution.") Although Zealy proclaims that he has no intention of upsetting the state court judgment, a favorable judgment in this case would have the effect of granting him compensation for the taking of his property rights.[8] In similar situations, the Seventh Circuit has ruled that the *Rooker–Feldman* doctrine applies. *See e.g., Long v. Shorebank Development Corporation,* 182 F.3d 548 (7th Cir.1999); *Garry v. Geils,* 82 F.3d 1362, 1365 (7th Cir.1996); *GASH Associates v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993); *Ritter v. Ross,* 992 F.2d 750 (7th Cir.1993), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

As the Seventh Circuit has observed, the distinction between *Rooker–Feldman* and claim preclusion is difficult to draw. *See Young v. Murphy,* 90 F.3d 1225, 1231 (7th Cir.1996). Even though Zealy was the Plaintiff in the state action, he is attacking the effects of the state court judgment

---

**8.** "Cases dealing with *Rooker–Feldman* generally address instances where the underlying harm alleged in the complaint has gone un-

rectified." *Young v. Murphy,* 90 F.3d 1225, 1231 (7th Cir .1996).

(non-compensation), so the court concludes that the *Rooker–Feldman* doctrine applies to bar his substantive due process claim in this case.

## 2. Claim Preclusion

■ Even if the *Rooker–Feldman* doctrine does not divest this court of jurisdiction, the City of Waukesha has successfully interposed the affirmative defense of *res judicata* or claim preclusion. The "Full Faith and Credit" statute, 28 U.S.C. § 1738, requires federal courts in a section 1983 action to give state court judgments the same preclusive effect those judgments would have in the rendering state's courts. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 80–81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The preclusive effect of a state court judgment on a subsequent section 1983 claim in federal court is a matter of state law. *See Rooding v. Peters,* 92 F.3d 578, 580 (7th Cir.1996).

In Wisconsin, the doctrine of claim preclusion[9] provides that a "final judgment on the merits bars parties from relitigating any claim that arises out of the same relevant facts, transactions or occurrences." *Sopha v. Owens–Corning Fiberglas Corporation,* 230 Wis.2d 212, 601 N.W.2d 627, 636 (1999). "Ordinarily a final judgment is conclusive in all subsequent actions as to all matters 'which were litigated or which might have been litigated in the former proceedings.'" *Id.* at 601 N.W.2d at 637 (quoting *DePratt v. West Bend Mutual Insurance Company,* 113 Wis.2d 306, 308, 334 N.W.2d 883, 885 (1983)). For claim preclusion to apply, Wisconsin's courts require the presence of three factors: (1) an "identity between the parties or their privies in the prior and present suits"; (2) the "prior litigation resulted in a final judgment on the merits by a court with jurisdiction"; and (3) an "identity of the causes of action in the two suits," *Sopha,* 230 Wis.2d at 233–34, 601 N.W.2d at 627.

■ Applying this test to Zealy's cases, the court finds that it is undisputed that the parties are the same in his state and federal actions and that the prior litigation resulted in a final judgment on the merits by the Wisconsin Supreme Court. The third factor—identity of the causes of action—is also satisfied under Wisconsin's transactional approach to claim preclusion. Under this approach, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Northern States Power Company v. Bugher,* 189 Wis.2d 541, 553, 525 N.W.2d 723, 728 (1995), *quoting* Restatement (2d) of Judgments § 24(1) (1982). The Wisconsin courts focus on facts, not legal theories, to determine whether an action is precluded. *See Northern States Power,* 189 Wis.2d at 554, 525 N.W.2d at 729 ("[T]he number of substantive theories that may be available to a plaintiff is immaterial—if they all arise from the same factual underpinnings they must all be brought in the same action or be barred from future consideration.").

■ In Zealy's case the easement contract was part of a series of related transactions involving the rezoning of part of his land. He complains that preclusion should not apply because he was obligated to exhaust his state remedies before bringing his substantive due process claim.[10] It

---

9. Wisconsin had adopted the term "claim preclusion" as a replacement for the traditional "res judicata." *See Northern States Power Company v. Bugher,* 189 Wis.2d 541, 549–50, 525 N.W.2d 723, 727 (1995).

10. Zealy made no reservation of the right to bring any federal claims he had in a federal forum.

is true that federal law imposes a ripeness requirement on Takings Clause claims and similar substantive due process claims. *See Forseth v. Village of Sussex,* 199 F.3d 363, 368–70 (7th Cir.2000). While the Seventh Circuit has recognized that exhausting state remedies often results in subsequent suits being dismissed on grounds of preclusion, exhaustion is nonetheless a requirement. *See Forseth,* 199 F.3d at 372 n. 13. The essence of the claim preclusion doctrine is the public policy that all matters which were tried or should have been tried are settled forever as between the parties. There is no public policy in favor of allowing a party an opportunity to raise the same claims in a second forum. Therefore, because all three requirements for claim preclusion have been met, Zealy's claims in this court are barred.

### *ORDER*

For the reasons explained above, the court ORDERS that the "Plaintiff's Motion for Summary Judgment" (filed March 1, 2001) IS DENIED.

IT IS FURTHER ORDERED that the Defendant's "Motion for Summary Judgment" (filed March 1, 2001) IS GRANTED.

IT IS FURTHER ORDERED that this action is dismissed for lack of subject matter jurisdiction.

IT IS FURTHER ORDERED that the Clerk of Court shall enter a final judgment as a separate document. *See* Federal Rule of Civil Procedure 58. This judgment shall provide that:

> This action came on for hearing before the court, the Honorable Thomas J. Curran, District Judge, presiding, and the issues having been heard and a decision having been rendered,
> IT IS ORDERED AND ADJUDGED
> that the Plaintiff Alfred A. Zealy take nothing and that this action brought against Defendant City of Waukesha is dismissed for lack of subject matter jurisdiction.

Affidavit of Alfred A. Zealy at ¶¶ 2–4. Although the Defendant argues that Zealy lacks standing to maintain this suit, Zealy points out that, as the sole trustee of the Alfred A. Zealy Revocable Trust, he is the real party in interest. *See* Federal Rule of Civil Procedure 17(a).